# FANNY SONNENFELD v. ISAAC B. ROSENTHAL, Appellant.

### Division Two, December 31, 1912.

1. **COMPULSORY REFERENCE: Review of Facts.** Where under the pleadings, in a cause involving numerous items of indebtedness and counterclaim, a reference is properly compelled, the findings of facts may be reviewed on appeal.

2. **WRITTEN CONTRACT: Expanded by Oral Evidence: Loans.** It is not permissible to expand a written contract by oral evidence. Where plaintiff declared on a written contract for loans to be made during the year 1891 she cannot recover on loans made after December 31, 1891—there being no evidence, oral or written, to modify the written contract as executed. The loans made after that date constitute a mere open account.

3. **OPEN ACCOUNTS: Loans: Limitations.** Whether or not open accounts of loans made were barred by the five-year Statute of Limitations or saved from the bar by certain payments, will not be decided, where there is no substantial evidence that the loans were made.

4. **————: ————: Book Account: Carried in Name of Another.** The book of the Sonnenfeld Millinery Company, a corporation, whose certificates of stock plaintiff owned and whose manager was Adolph Rosenthal, showing loans to "Adolph Rosenthal, Special," were not competent evidence to establish loans made by plaintiff to defendant I. B. Rosenthal.

5. **————: ————: Cash Drawer Slips: Extract Copies.** Copies of slips of paper kept in the cash drawer of such corporation, purporting to show loans to said defendant, which are not exact copies of the slips, but only extracts from such slips of items taken from the original slips, from which various items which may explain or qualify the items copied are omitted, are not competent evidence.

6. **————: ————: Evidence Not Preserved on Appeal.** The burden is on the appellant to show that the judgment of the trial court, adjudging that plaintiff has loaned him a named sum on open account, was not supported by the evidence; and where appellant has not brought up an abstract of the book account pertaining to the loans, and there is substantial oral evidence showing they were made, the appellate court cannot say the judgment in that regard is erroneous.

7. PLEADING: Declaring on Contract: Amendment After Verdict: Departure. A petition declaring on a contract, dated on or about February, 1892, in which defendant acknowledged himself to be indebted to plaintiff in the sum of $16,648.86 for money borrowed, and which it is alleged is in the possession of defendant, was properly permitted to be amended after final judgment on the referee's report, to conform to the proof, so as to rest her cause of action upon a contract, dated January 3, 1891, and reciting an indebtedness of $11,573.24 for money borrowed and of $5426.26 to be borrowed during the year. The amendment did not substitute a different cause of action and was not a departure, and defendant having had the contract in his possession was not misled by the amendment.

8. ————: ————: Order to Produce Contract: Denial of Existence: Deceit. Where the petition declares on a contract and alleges it is not attached to the petition because it is in the possession of defendant, and defendant is ordered by the court to produce the contract, an assertion, in excuse for disobedience to that order, that there is no such contract in existence, whereas the contract introduced at the hearing by defendant is substantially the contract declared on in the petition, amounts to deceit; and the intended deception will be taken into account in considering defendant's objection to an amendment of the petition, after the contract is introduced, so as to conform to the proof.

9. LIMITATIONS: Indebtedness: Evidenced by Written Contract. Where the indebtedness recited in a written contract dated January 3, 1891, was to become due and payable two years after date, a suit therefor was not barred by limitations if instituted at any time before January 3, 1903.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Albert Arnstein, Herbert N. Arnstein* and *Judson & Green* for appellant.

(1) A suit cannot be instituted on one cause of action, and a recovery had on another. Butcher v. Death, 15 Mo. 271; Clements v. Yeates, 69 Mo. 623; Stix v. Matthews, 75 Mo. 96; Comm. Co. v. Bank, 116 Mo. 558; Construction Co. v. Iron Works, 169 Mo. 137. The court having found the only contract was

that of January 3, 1891, for $11,573.74, erred in render-ing a judgment for plaintiff on a petition which counted upon a contract of February, 1892, for $16,-648.86. (2) The granting of leave to amend a petition when the cause of action is not thereby changed, is within the sound discretion of the court, but the abuse of this discretion is error. That discretion is abused when the party to whom the leave has been granted is guilty of gross laches. Emeric v. Alvarado, 90 Cal. 444; Craig v. Rope Co., 38 Col. 115; Mining Co. v. Hanley, 9 Ida. 786; Sanders v. Wakefield, 41 Kan. 11; Hill v. Ragland, 114 Ky. 209; Association v. Brahan, 80 Miss. 407; Kelly v. Kershaw, 5 Utah, 295; Miller v. Mitchell, 58 W. Va. 431; Bank v. Goldsoll, 8 Mo. App. 595; 1 Am. and Eng. Ency. Law, 522. This cause was tried before the referee, and before the court on exceptions to the referee's report, upon the plaintiff's allegation that the contract relied on was the one of February, 1892. The contract of 1891 was in evidence one and one-half years before the amend-ment to the petition was made; yet after its introduc-tion, plaintiff still insisted that she relied on the 1892 contract and defendant was put to great trouble and expense to meet that issue; plaintiff's laches under the circumstance was unpardonable, and the court erred in permitting the petition to be amended at that late day, and defendant's motion to set aside the order granting such leave should have been sustained. (3) It is error to grant leave to amend a pleading when its effect is to change the entire cause of action. Scovill v. Glasner, 79 Mo. 449; Lamar v. Lamar Co., 118 Ga. 850; Heman v. Glann, 129 Mo. 325; Lennox v. Coal Co., 158 Mo. 473; Ross v. Mineral L. Co., 162 Mo. 317. (4) There are three tests to determine whether an amendment states a new cause of action, to-wit: Will the same evidence support both pleadings? Will the same measure of damages apply? Would a judgment on one action bar an action upon the other? Liese v.

Meyer, 143 Mo. 547; Scovill v. Glasner, 79 Mo. 449; 3 Cyc. 679; Van Patten v. Waugh, 122 Iowa, 302; Whalen v. Gordon, 95 Fed. 305; Ross v. Mineral L. Co., 162 Mo. 317; Lumber Co. v. Water Co., 94 Tex. 456. By any one of these tests it is clear the amendments to the third amended petition constituted a new and distinct cause of action. (5) When an amendment sets up an entirely new cause of action, the running of the Statute of Limitations is not arrested until the amendment is filed. Buel v. Transfer Co., 45 Mo. 562; Patillo v. Com. Co., 131 Fed. 680; Sims v. Field, 24 Mo. App. 557; Bricken v. Cross, 163 Mo. 449; Philadelphia v. Railroad, 203 Pa. St. 38; Railroad v. Scott, 75 Tex. 84; Cotton v. Rand, 93 Tex. 7; Nelson v. Bank, 139 Ala. 578; Railroad v. Wyler, 154 U. S. 285. Since the amendment to the third amended petition sets up an entirely new cause of action, and was not filed until February 15, 1908, nearly fourteen years after the date of the last alleged loan, the entire first cause of action is barred on the face of the pleadings. Burrus v. Cook, 215 Mo. 496. (6) The loans alleged to have been made in 1892-3-4, aggregating $11,952.50, less credits of $6006.25, were barred by the five-year Statute of Limitations at the time the suit was filed September 19, 1902, for the reason that the contract of January 3, 1891, on which plaintiff finally based her case, provided only for additional loans to be made during the year 1891, and the loans of 1892-3-4 had no written contract to support them. R. S. 1909, sec. 1889. (7) There was not a scintilla of evidence in the record proving or tending to prove that the sum of $5075.12 or any other sum was loaned defendant during 1891, that allegation having been set up for the first time in the amendment to the third amended petition; error was committed in including that amount in the judgment. (8) R. S. 1909, sec. 1859, provides: "If any amendment be made to any

pleading, the adverse party shall be allowed an opportunity, according to the course and practice of the court, to answer or reply to the pleading so amended.'' Defendant was given no opportunity to plead to the amendments to the third amended petition, and if this case cannot be decided on other grounds, it must be reversed as in violation of this statute. (9) The lists alleged to have been made by Meyer, the bookkeeper, should not have been admitted in evidence, because (a) they do not show all the items of the alleged account, but are simply compilations of the bookkeeper, of what he says were "unsettled" items; and, by analogy to the authorities holding that books or memoranda showing only balances or totals are incompetent, should have been excluded. Putnam v. Grant, 101 Me. 240. (b) They were not contemporaneous with the facts alleged to be recorded therein, and therefore not part of the *res gestae,* both of which are essential to the admissibility of book entries. Investment Co. v. Vette, 142 Mo. 560; Milling Co. v. Walsh, 108 Mo. 277; Wells v. Hobson, 91 Mo. App. 379; Stephan v. Metzger, 95 Mo. App. 609. (c) They were not original entries; they were compilations of and extracts from prior lists; they were made in 1895, and purport to show alleged transactions of 1892, 1893 and 1894. Milling Co. v. Walsh, 108 Mo. 277; Stephan v. Metzger, 95 Mo. App. 609; Gubernator v. Rettalack, 86 Mo. App. 184.; Owen v. Bray, 80 Mo. App. 526; Stark v. Burkit, 129 S. W. (Tex.) 343; Estes v. Jackson, 21 Ky. L. R. 859; Bank v. Chaffin, 118 Ala. 246; Woolsey v. Bohn, 41 Minn. 235; Drug Co. v. Graddy, 57 Mo. App. 41. (10) The account entitled "Adolph Rosenthal Special Account" was not admissible in evidence, because: (a) it does not purport to charge the defendant for loans from plaintiff, but on its face is an account between the Sonnenfeld Millinery Company and Adolph Rosenthal. (b) Certain entries in the account were conclusively proved to have been made from twelve days to three

months and nineteen days after the transaction. Hence the account did not consist of contemporaneous entries, part of the *res gestae*. Investment Co. v. Vette, 142 Mo. 560. (c) The first item of the account was on its face not an original entry. This item reads: "February 1, 1892. To balance $16,648.86." It should therefore have been excluded both as being an aggregate or balance, and as not being an original entry. McClintock's Appeal, 58 Mich. 152; Corr v. Sellers, 100 Pa. St. 169. (11) The reference was compulsory, and the appellate court should review the findings of fact. Small v. Hatch, 151 Mo. 300; Williams v. Railroad, 153 Mo. 487.

*David Goldsmith* for respondent.

(1) There being no objection to the introduction of the testimony with respect to the "Adolph Rosenthal Special" account before the referee, objection cannot be made thereto in this court. Hill v. Bailey, 8 Mo. App. 83; Morris v. Husson, 8 N. Y. 204; Phelps v. Peabody, 7 Cal. 50; Simpson v. Gregg, 5 Neb. 237; Matter of Little, 47 App. Div. (N. Y.) 22. (2) The exceptions taken to the referee's report with regard to that account, are insufficient, and are therefore not available in this court. Ferry Co. v. Railroad, 73 Mo. 419; Cahill Co. v. McCormish, 74 Mo. App. 613; Dallas v. Brown, 60 Mo. 496; Royall's Admr. v. McKenzie, 25 Ala. 364; Loveman v. Taylor, 85 Tenn. 2; Snell v. DeLand, 138 Ill. 55; Title Co. v. Burdette, 104 Md. 676; Arthur v. Commissioners, 67 Pa. St. 223; Burt's Estate, 114 Pa. St. 190; Cooper v. Middletown, 94 N. C. 93. (3) Even if the exceptions to the referee's report with respect to that account were sufficient, they would apply only to the account in its entirety, and not to any item of it. Stephan v. Metzgar, 95 Mo. App. 623; Logan v. Field, 192 Mo. 69; Grimm v. Dundee Co., 55 Mo. App. 557. (4) The

entries in the books or slips of the Sonnenfeld Millinery Company with respect to the loans made in 1893 and 1894, are original entries. Plummer v. Struby Co., 23 Colo. 190; Hall v. Gliddon, 39 Me. 445; Nichols v. Vincent, 9 Houst. (Del.) 274; Redlich v. Bauerlee, 98 Ill. 134; Hartley v. Brookes, 6 S. & R. (Pa.) 189. "Original entries on loose sheets are as competent as like entries in books of account." Bell v. McLeran, 3 Vt. 185; Gleason v. Kinney's Admr., 65 Vt. 560; Taylor v. Tucker, 1 Ga. 234; Smith v. Smith, 4 Harr. (Del.) 532; Kendall v. Field, 14 Me. 30. And these entries and slips are competent as secondary evidence. Stanley v. Wilkerson, 63 Ark. 556; McCrady v. Jones, 36 S. C. 196; Rigby v. Logan, 45 S. C. 651; Pohl v. Bradford, 25 S. W. 984. (5) They were properly used as memoranda to refresh the memory of Joseph W. Meyer. Stephan v. Metzgar, 95 Mo. App. 624; Eberson v. Investment Co., 130 Mo. App. 308; Ward v. Transfer Co., 119 Mo. App. 92. (6) The amendment of plaintiff's petition made after the report of the referee did not amount to a change of the cause of action originally pleaded. Little v. Fairchild, 195 Pa. St. 614; Bedford v. Terhune, 30 N. Y. 453; Gray v. Bass, 42 Ga. 270; Kimble v. Bryan, 56 Iowa, 632; McVicker v. Beedy, 31 Me. 382; Johnson v. Association, 48 N. Y. 439; Stewart v. Van Horn, 91 Mo. App. 655; Farmington v. Tel. Co., 135 Mo. App. 697; Clarkson v. Lee, 133 Mo. App. 53. (7) Any deficiency in the pleadings of the plaintiff with respect to the Statute of Limitations will be aided by the issues raised by the answer. Garth v. Caldwell, 72 Mo. 403; Hughes v. Carson, 90 Mo. 399. And facts appearing from the evidence of the defendant with respect to the applicability of the Statute of Limitations will be considered though not pleaded. Milburn v. Railroad, 86 Mo. 104; Hudson v. Railroad, 101 Mo. 30; Sissel v. Railroad, 214 Mo. 526; Canal Co. v. Bentley, 66 Pa. St. 33; Bunnell v. Railroad, 13 Utah, 323; Adderton

v. Collier, 32 Mo. 507; Williams v. McGrade, 13 Minn. 54; Pierson v. David, 4 Iowa, 416; McDonald v. Smith, 24 Ark. 617.

BROWN, P. J.—Civil action in the circuit court of St. Louis City for money loaned. Judgment for plaintiff. Defendant appeals.

On September 1, 1902, plaintiff instituted this suit, against defendant on the following causes of action: One promissory note for $900 dated November 10, 1894; one promissory note for $750 dated October 18, 1891; and also for money due her under á contract, which is described in her third amended petition as follows:

"That on or about February, 1892, plaintiff and defendant entered into a written contract, and in that contract the defendant acknowledged he was indebted to the plaintiff in the sum of $16,648.86, and by the terms of said contract defendant agreed to pay plaintiff said amount upon demand.

"Defendant further agreed in said contract that he would secure plaintiff in the amount which he was indebted to her as above stated, by depositing with the plaintiff a sufficient number of shares of the stock of the I. B. Rosenthal Millinery Company as collateral to secure plaintiff said above named amount, and also to secure plaintiff for such other amounts as might be advanced by plaintiff to the defendant.

"Plaintiff further states that by the terms of said contract she agreed to advance the defendant, in consideration of his depositing with her as collateral security stock of the I. B. Rosenthal Millinery Company, as above stated, money through the Sonnenfeld Millinery Company, a corporation doing business in the city of St. Louis, whenever she had to her credit in the Millinery Company surplus funds to loan.

"Plaintiff further states that she was a large stockholder in said Sonnenfeld Millinery Company and

that by the terms of said contract, through said millinery company, after said contract had been executed she did advance to the defendant at various times sums of money as follows:"

Then follows an account of moneys alleged to have been loaned to defendant by the plaintiff under said contract at different dates, beginning March 18, 1892, and ending October 27, 1894, aggregating the sum of $11,962.50, making the total amount sued for, exclusive of interest, $30,261.36.

Plaintiff did not file the contract sued on, and assigns as her reason for failing so to do, that the contract is in possession of the defendant, who refuses to give it to her, or allow her to examine it.

Defendant's answer admits the execution of the notes sued on, and pleads payment thereof. He also pleads the ten-year Statute of Limitations against the $750 note.

Defendant also pleads payment of the amounts borrowed on the alleged contract described in plaintiff's petition, and states that if any cause of action ever existed on said contract, it is barred by the ten-year Statute of Limitations. He also pleads the five-year Statute of Limitations against any action which may have accrued to plaintiff for moneys loaned to him after the execution of the contract pleaded by plaintiff.

Defendant also pleads counterclaims against plaintiff on account of certain notes which he endorsed for her accommodation and was compelled to pay, which counterclaims, exclusive of interest, amounted, as pleaded, to $15,101.09.

The trial court appointed a referee to hear the evidence and report his findings of fact and conclusions of law. The referee made a finding of fact in favor of defendant on the $750 promissory note, and also a finding in favor of defendant on his three counterclaims for the aggregate sum (including interest) of

$17,729.01, which findings in favor of defendant were approved by the court, and from which plaintiff did not appeal.

The referee found that after deducting the above mentioned counterclaims and certain credits hereinafter noted, there was a balance due plaintiff on the contract and $900 note, of $9,504.22, for which balance the court rendered judgment against the defendant, and from which this appeal is prosecuted.

During the pendency of the action, the plaintiff procured an order from the court requiring the defendant to produce the alleged contract declared upon in her petition. Defendant refused to produce the contract, and as grounds for such refusal, asserted that (1) he did not have the contract in his possesssion, and (2) that there was no such contract in existence.

During the progress of the trial, the defendant introduced in evidence the following contract:

This agreement entered into this third day of January, 1891, by and between Fannie Sonnenfeld, of the city of St. Louis, and State of Missouri, party of the first part, and I. B. Rosenthal, of the same place, party of the second part, witnesseth:

That whereas, said party of the second part is indebted to said party of the first part in the sum of $11,573.74 for money borrowed of said party of the first part, and for which loan he has this day made and delivered to said party of the first part his promissory collateral note theretofore, payable two years after date with interest at the rate of five per cent per annum; and

Whereas, it is the purpose of said party of the second part to borrow further of said party of the first part *during the year* 1891, the sum of $5,426.26 in such amounts as he may require the same, from time to time; and it is the purpose of said party of the first part to lend him the said money as required at an interest of five per cent per annum, provided the said loan is properly secured by collateral property; and

Whereas, in the event of said loan being made and secured as aforesaid, and the agreements herein to be performed by said party of the second part are faithfully carried out by him, it is the purpose of said party of the first part to extend the period

for payment of said first mentioned loan, secured by said promissory note and collateral property;

Now, therefore, in consideration of the premises and the sum of one dollar paid by said party of the second part, to said party of the first part, it is agreed as follows:

1st. That during the year 1891, the said party of the first part will lend said party of the second part the sum of $5426.26, in such amounts as he may require from time to time, which said money thus borrowed shall bear interest at the rate of five per cent per annum, from the date of loan until paid.

2nd. That as security for the said moneys borrowed as aforesaid, said party of the second part, shall execute his promissory collateral note of the average date of said loans, and within twelve months thereof, payable four years after its date, to the order of the said party of the first part, with five per cent interest per annum from its date; and shall deliver at the time of its execution said note to said party of the first part, and within two years thereafter, one hundred and forty-seven shares of the capital stock of the I. B. Rosenthal Millinery Company, as security therefor; and said stock which has been and is now hypothecated at the German Exchange Bank in the city of New York by said party of the second part for a loan of money made to him thereon, is herewith hypothecated by said party of the second part to said party of the first part, subject to said first lien thereon, as aforesaid, by said party of the first part; and said party of the first part is hereby authorized to advise said bank of said hypothecation.

3rd. It is agreed that certificate No. Thirteen, and certificate No. Nineteen, the former for one hundred shares and the latter for thirty shares of the I. B. Rosenthal Millinery Company stock, both now hypothecated for the security of the collateral note of this date made by party of the second part to the order of party of the first part, for the sum of $11,573.74, shall be held by said party of the first part and considered as hypothecated to her as further security for said moneys to be loaned to said party of the second part as aforesaid.

4th. In the event of the faithful performance of the conditions herein upon the part of the party of the second part, it is agreed that the said collateral note of $11,573.74 shall be extended in time for its payment until the end of three years from its date; and in that event the entire indebtedness of said party of the second part to said party of the first part as evidenced by both said notes, shall be paid by him as follows, to-wit: twenty per cent of the same and the interest thereon within two years from the dates of said notes; twenty per cent of the same and the interest thereon within three years from the dates of said notes; twenty per cent of the same and the interest thereon within three years and six months from the dates of

said notes, and forty per cent of the same with the interest thereon, within four years from the dates of the said notes.

5th.  In the event of nonextension of time being given for the payment of the said first mentioned collateral note by reason of the failure of the party of the second part to perform the conditions herein to be carried out by him, then and in that event, both of said notes shall mature in accordance with their terms.

In witness whereof, the parties hereto, in duplicate have hereunto set their hands this third day of January, 1891.

FANNY  SONNENFELD.<br>I. B. ROSENTHAL.

Witnessed by:

M. B. JONES, as to
I. B. ROSENTHAL.

It will be observed that the only difference between the contract declared upon and the one introduced in evidence is as follows:

The contract declared upon in plaintiff's petition is charged to have been executed about February 1, 1892, and is alleged to have contained the following provisions: An acknowledgment of an indebtedness from defendant to plaintiff of $16,648.86, payable on demand, and a promise by plaintiff to loan to defendant additional sums of money, the dates and amounts of said loans not being designated.

The contract introduced by defendant is dated January 3, 1891, and acknowledges an indebtedness from defendant to plaintiff of $11,573.74, and provides for the loan of additional amounts during the year 1891, aggregating the sum of $5426.26, all payable two years after date.

After final judgment had been entered and while defendant's motion for new trial was pending, plaintiff, by leave of court, amended her petition so as to declare upon the contract introduced by defendant and hereinbefore set out. Defendant excepted to the court's action in permitting plaintiff to so amend her petition.

Defendant's motion for a new trial was overruled, after which he filed a motion to set aside the order

permitting the plaintiff to amend her petition after judgment, alleging in said motion that such an amendment of the petition set up a new and different cause of action to which defendant had been given no opportunity to plead or make his defense. Defendant also moved to strike out plaintiff's petition as amended after judgment.

Both motions were overruled and defendant excepted.

## OPINION.

Under the pleadings this is a case where the court properly compelled a reference; and therefore **Reference Compulsory.** we may review the findings of fact. [Smith v. Baer, 166 Mo. 392; Williams v. Railroad, 153 Mo. 487; Bank v. Donnell, 172 Mo. 384.]

The evidence is voluminous, and of a very conflicting nature. This in part is due to the fact that the cause was tried about fifteen years after most of the transactions in evidence occurred; consequently, the parties and their witnesses did not possess a clear recollection of the facts upon which they essayed to give evidence. There was also so much personal feeling between the parties that their evidence at many points was apparently colored to suit their respective interests.

The plaintiff and defendant are brother and sister. Defendant failed in business about the year 1888, and shortly thereafter organized or assisted in organizing the I. B. Rosenthal Millinery Company. About the year 1889, Herman Sonnenfeld, the plaintiff's husband, and Adolph Rosenthal, a brother of both plaintiff and defendant, incorporated the Sonnenfeld Millinery Company. Adolph Rosenthal, while nominally holding one-half the stock of the company, had made only a small payment thereon, and owed his brother-in-law, Herman Sonnenfeld, for the remainder. During the year of 1890 the Sonnenfeld Millinery Company was doing a profitable business. In the autumn

of that year, Herman, Sonnenfeld died.  By his will, all his property, as well as $29,000 of life insurance, passed to the plaintiff.  Shortly thereafter, Adolph Rosenthal was made president of the Sonnenfeld Millinery Company, and took upon himself the entire management of that corporation.  The plaintiff, being unskilled in business matters, entrusted most all of her business affairs to her brother Adolph.

Defendant borrowed sundry amounts of plaintiff prior to January 3, 1891, on which day the contract introduced in evidence was executed, acknowledging his indebtedness to her of $11,573.74, and providing for additional loans from plaintiff during the year 1891 amounting to $5426.26.  Plaintiff testified that the contract was executed in duplicate, one copy of which was retained by the defendant, and the other given to her brother Adolph to hold for her.  She never saw her copy of the contract again until it was introduced by the defendant at the trial.  Adolph Rosenthal testified that he placed plaintiff's copy of the contract in the safe of the I. B. Rosenthal Millinery Company, in a private box which he kept in said safe; that subsequently he saw the contract in defendant's possession; that defendant reprimanded him (Adolph) for being careless with valuable papers and stated that he (defendant) would take care of the contract.  Defendant admitted that the contract was executed in duplicate, but testified that plaintiff's copy thereof was delivered to him about the year 1898, after he had paid off all the indebtedness recited therein.

The referee found that defendant had not paid all the indebtedness recited in the contract, but was entitled to credits thereon as follows:

On account of a sale of certain real estate in Kansas City which stood in the name of Adolph Rosenthal and in which defendant held an interest .... $2916.67

250 shares of capital stock in an automatic steam coupler company purchased by the defendant for the

plaintiff at her request ...................$6250.67

Making a total of credits allowed on the contract ...............................$9166.67

The plaintiff was on the stand in rebuttal, but did not deny that she authorized defendant to purchase the coupler stock for her nor that she agreed to give him credit on the contract for money expended in buying said stock.

There was some conflict in the evidence as to the Kansas City real estate deal, but on that transaction there was substantial evidence that defendant was entitled to the credit given him.

Defendant also claimed a credit of $4000 for services rendered in securing a lease for the Sonnenfeld Millinery Company to certain property in St. Louis and in securing subtenants for said property in such manner as to benefit the plaintiff several thousand dollars annually. Defendant testified that he was to have had a one-fourth interest in this lease and in the profits to be derived therefrom. He also testified that Adolph as plaintiff's agent agreed to give him (defendant) credit for $4000 on the contract of January 3, 1891, for his interest in or services rendered in connection with the lease. Defendant's name was not mentioned in this lease, and he offered no written memorandum in support of his oral statement. The evidence of beneficial services rendered by him in procuring the lease is too meager to justify the allowance of the credit claimed. The referee and the court properly denied the defendant any credit on this transaction.

The $900 promissory note for which plaintiff had judgment below, was introduced in evidence by the defendant, and he contends that the same was fully paid off and discharged by him. However, his evidence on that point is not satisfactory and we think the referee's finding for plaintiff on that item was correct.

The main controversy in this case is upon the
**Written** plaintiff's account for moneys alleged to
**Contract:** have been loaned to defendant between
**Oral evidence**
**to contradict.** March 18, 1892, and October 27, 1894.

Defendant having amended her petition after
the evidence was in, so as to declare upon the
contract of January 3, 1891 (hereinbefore set out);
and as that contract only provides for loans to be made
during the year 1891, there can be no recovery upon
the contract for loans made after December 31, 1891,
without adding to or expanding the express terms of
the written contract by oral evidence, which is not per-
missible. [Helmrichs v. Gehrke, 56 Mo. 79; Hagar v.
Hagar, 71 Mo. 610.] There is no evidence of any agree-
ment oral or written to modify the written contract as
executed. If loans were made to defendant after Jan-
uary 3, 1891, as alleged in plaintiff's petition and testi-
fied to by her witnesses, those loans constituted a mere
open account, and must be so treated.

It is vigorously asserted by defendant that as the
last item of these open accounts for money loaned is
dated October 27, 1894, and the suit was not instituted
until September 3, 1902, the accounts were barred by
the five-year Statute of Limitation. On the other hand
plaintiff contends that the payment made by defendant
for the purchase of the coupler stock should be credit-
ed on the open account and thereby prevent the bar
of the five-year statute.

However, we find it unnecessary to determine
whether or not these open accounts were barred, for
the reason that it is no substantial evidence that said
loans were made.

To prove that loans were made by plaintiff to de-
fendant on and after March 18, 1892, plaintiff intro-
duced her brother, Adolph Rosenthal,
**Open Account** who had charge of the Sonnenfeld Milli-
**not proven.** nery Company from 1892 to 1895, and

Joseph Meyer, who acted as secretary, treasurer and bookkeeper of the company during that period.

These witnesses testified that the books of the Sonnenfeld Millinery Company did not specifically indicate any loan made to defendant, between March, 1892, and October, 1894, but they exhibited an account in said books against "Adolph Rosenthal, Special." which they testified was in reality an account against I. B. Rosenthal, defendant. That I. B. Rosenthal requested that his account be kept in that form to prevent the commercial agencies from ascertaining his indebtedness to plaintiff. Several of the items sued for are entered on this "Adolph Rosenthal, Special" account, and they were admitted in evidence over the objection of the defendant.

The remainder of the items sued for in the open account were proven by copies or abstracts of slips of paper which said witnesses Meyer and Adolph Rosenthal testified were kept in the cash drawer of the Sonnenfeld Millinery Company, and treated as cash assets. Meyer explained that Adolph Rosenthal directed him not to enter these cash drawer slips on the books of the Sonnenfeld Millinery Company. It was further explained that the copies of papers introduced, and from which said witnesses refreshed their memories while testifying, were not copies of all transactions had between plaintiff and defendant between March, 1892, and October, 1894, but only covered items loaned by plaintiff to defendant through the Sonnenfeld Millinery Company, which had not been paid. Said witnesses had no personal recollection of the loans except as they refreshed their memories by the copies of papers introduced.

In 1895 the Sonnenfeld Millinery Company sold its store to another firm, to whom it delivered its books. Witnesses Adolph Rosenthal and Meyer copied certain parts of the cash drawer slips in 1905, just before turning over the originals to the firm

which bought out the Sonnenfeld Millinery Company. Why the original slips purporting to charge I. B. Rosenthal with loans were delivered to the succeeding firm is not explained. It is very clear that the succeeding firm did not have any interest in these slips, as they only covered a personal account between plaintiff and defendant. Meyer testified that entries on the books of the Sonnenfeld Millinery Company against defendant represented the indebtedness of said defendant to plaintiff individually, and not to the company.

At the trial, the books kept by the Sonnenfeld Millinery Company, showing the "Adolph Rosenthal, Special" account, were introduced, but the original cash drawer slips could not be found. The copies of these slips before referred to were admitted over defendant's objections.

Plaintiff testified that she gave little or no attention to any of her business, but entrusted everything to her brother Adolph. She says she directed Adolph to loan money to defendant from the surplus of the Sonnenfeld Millinery Company. She also testified that she herself made one loan of ten thousand dollars to defendant, for which she gave him her individual check, but a copy of her bank account does not show any check for as much as $10,000.

Wholesale merchants, Motley & Stearns, who were dealing with the Sonnenfeld Millinery Company in 1892, 1893 and 1894, stated that said company was very slow about paying its bills in those years; that the company sold some of its capital stock in August, 1893, to pay for goods purchased. It was further proven, and not denied, that the Sonnenfeld Millinery Company borrowed considerable sums of money from a bank in the year 1894. Plaintiff's witness Meyer admitted on cross-examination that the Sonnenfeld Millinery Company was hard pressed to meet its bills at several times during 1892, 1893 and 1894; that defendant helped the company to pay many of its bills:

that several times during those years the company's credit was so weak that defendant signed and left with it numerous blank checks which were used when the company became greatly embarrassed for want of ready cash.

A copy of plaintiff's bank account during the year 1891 was introduced, showing that she deposited that year $36,965.59, one item of deposit being $15,000 on January 1, 1891, and another $10,000 on March 21, 1891. On March 4, 1892, her account had been reduced to $2281.45. This indicates that she received her insurance money during 1891 and loaned, invested or expended all of it except $2281.45 during that year.

On January 16, 1892, defendant was in New York, and being in need of $6750, wrote the following letter to his brother Adolph who was then president of the Sonnenfeld Millinery Company.

New York, Jan. 16, 1892.

Dear Brother Adolph:

From a letter received from home, I am informed you are again in St. Louis, and I hope you enjoyed your trip and I am anxious to hear results, we are working very hard and I know we will have the greatest stock we ever had in all lines.

My main object in writing you today is a very, very important matter, and if you remember right, I always had a little fear for I know the S. of B. I have to deal with. Enclosed notice I got yesterday and when I came there Mr. S. Z. says Ike you and I will have a little fight, and he says the stock of the I. B. Rosenthal Millinery Company at G. Exchange Bank belongs to him, that he loaned it to M. B., etc. I of course laughed at him and gave him a hell of a layout, he talked of putting injunction, etc. It is too lengthy for me to go in details, but there is no doubt but this S. of B. are up to all schemes and no doubt would get our beloved brother's assistance, and if nothing else could make a lot of trouble and expense, so I cannot take the whole city in confidence, but I just had a long talk with my friend Stearns who is really a very good friend of mine and as true as a man can be and he advised me to pay the note which is $6750.00, get and take out the stock before I leave, he says he certainly would do nothing else, for it might bother me. He would give me the money but at present is himself short, they import and manufacture largely and he says why don't you get Adolph to give it to you and assures

me that whenever we need money at any time, we should send him our note and he would get it for us and I know he would if we need it. Now Adolph there is no use to explain you matters, you know that either Fanny or you are as safe on the entire amount as you could be. I am perfectly willing to place in your hands all of the stock in the I. B. R. M. Co., as security no matter what might happen which would give you 2 for 1 and more and you know that you can't lose on me. I am not going to try to convince you by writing my capacity or honesty, etc., but this is a very important matter but you must telegraph me on Monday care of Stearns and Spingarn that you will honor my draft for $6750.00—do not advise me to try to get it here, for there is no one outside of Stearns that I would or dare ask and I am as anxious as you are to protect any dollars of Fannies and know it is as safe as anything you could invest money in and besides I will guarantee to you that should S. M. Co. ever be in need of money, I will be able to get all they want, now Adolph this is a very serious matter and you so understand it, you see S. Z. does not suspect I will go to the Bank now and offer them the money before I go away and Stearns thinks I will have no difficulty to get it from the Bank by giving them unexpected a certified check, so I ask you to act at once. I can say to you which you know that I. B. R. M. Co. don't owe a dollar here of last season except Stearns two thousand which is nothing and I can assure you not a man or firm comes to this market who stands in better credit anywhere and everywhere, so I can't afford to be bothered with this and get publicity and expense if nothing else and you know it is A-1 and I will place with you my half or I mean half of the I. B. R. M. Co. stock which is $50,000 and that is good enough. I know you are very funny sometimes, and I will only say that unless you telegraph me Monday favorable, I shall have to leave here with matters as they are, for I can't do miracles nor give myself away to anyone and no man knows better than yourself how safe it is and this very stock at the Bank, you are enough interested in with me to know what chances we should take. S. Z. & Co. are a hard set and will swear blue and green, etc., and to conclude this letter, you know it is as safe as the Bank of England and we should take no chances on it, you see even I could best them at their game it might cost me 1000 dollars lawyer fees and costs, etc., and it is so safe that there is no question about it— you know I don't lie as much as some in the family and I am going to ask Stearns to write a few lines to assert my statement. Now telegraph me on Monday early to Stearns & Spingarn. If you would have listened to conversation between S. Z. and myself, you would have considered it a daisy. They are desperate people—no man knows better than you do Adolph what a little wonder with nothing I did accomplish since I. B. R. &

Co. failure and whatever I asked you or anyone else to do for me is because I know it was safe if I kept my health and I am proud of what I did. Don't delay telegraphing me early Monday for dead or alive you run no risk and you are interested to avoid this trouble. With regards, Your Brother,

IKE.

Don't put this letter on your desk but destroy it; don't forget.

The evidence is quite clear that the defendant did not secure from Adolph Rosenthal or the plaintiff the loan which his letter indicated he desired to obtain, notwithstanding he offered security therefor. However, if the plaintiff's open account is correct, she began loaning him money shortly thereafter without security and kept making such unsecured loans until defendant owed her on open account $11,952.50.

The evidence further showed that the Sonnenfeld Millinery Company was five to eight months behind in paying its debts during 1892, 1893 and 1894, and presumably had no money to loan during those years. Adolph Rosenthal was recalled and testified that his company had plenty of money during 1892, 1893 and 1894, but instead of using it to pay its bills, he used it in his private affairs. On that point Adolph's evidence was as follows:

"I never made any personal requests of Motley and Stearns (the wholesale creditors) for indulgence about their accounts and I had money to pay them but didn't pay them promptly because I was using the money in outside things, outside the Sonnenfeld Millinery Company, for my own account.

"The Referee: Do you mean to say that you had Sonnenfeld Millinery Company money so you could pay these bills when they became due, but used it in your own private affairs? A. Yes, I did."

The evidence of Adolph Rosenthal was greatly weakened by his own admissions that he had misappropriated and embezzled the money and property of his sister, the plaintiff, and also by the evidence of

other witnesses that his reputation for veracity was bad. We regard his evidence of very little value, except where it is fully corroborated.

The books of the Sonnenfeld Millinery Company showing loans to "Adolph Rosenthal, Special," were not competent evidence to establish a loan made to defendant I. B. Rosenthal, for the obvious reason that they did not purport to contain a record of loans to defendant. This proposition is too plain to need citation for its support.

**Book Entries.**

The copies of cash drawer slips, purporting to show loans to I. B. Rosenthal, were also improperly admitted. We do not say that an account kept on a slip of paper is not such a book of account as might be used in evidence, but the papers set out in evidence were in fact not copies of the original cash drawer slips, but only extracts from such slips or items taken from the original slips. Various items which were originally on the slips and which might have explained or qualified the items copied, were left off of the copies.

**Copies of Accounts.**

In describing the copies of the cash drawer slips introduced in evidence, witness Meyer testified as follows:

"Q. Then this paper is simply an abstract of some items which appeared on those loose slips—and not an exact copy of those slips? An abstract of some items on those slips? A. Yes.

"Q. Then until those exhibits 'D' and 'E' were made you did not have any account whatever against I. B. Rosenthal, did you? A. I could not tell how much I. B. Rosenthal owed. No, not until I figured it out; I could not carry it in that shape of course.

"Q. Then you did not carry an account or any memorandum showing a complete account or the account of I. B. Rosenthal with the Sonnenfeld Millinery Company? A. Yes, that is all on the slip.

"Q. I say whether you carried an account—you know what an account is, don't you? A. Yes.

"Q. Well, did you, I say, carry a separate account? A. No, I did not.

"Q. Then you merely kept slips or memoranda in your drawer showing items which you say represented transactions between the Sonnenfeld Millinery Company and I. B. Rosenthal and others? A. Yes.

"Q. Then the exhibits 'D' and 'E' do not represent a copy of any book (I am not talking of an abstract), but they do not represent a copy of any record of the book or memorandum kept in lieu of books of the Sonnenfeld Millinery Company? A. Just extracts, I suppose you would call them, of the account of I. B. Rosenthal. . . .

"Q. Now, Mr. Meyer, did the firm of Sonnenfeld Millinery Company have any other transactions with I. B. Rosenthal? A. Yes, lots of them.

"Q. Both before and after the making of these slips? A. Yes, before and after.

"Q. Now, what has become of the record of those other transactions? A. They were balanced by the exchange of checks, I presume.

"Q. All exchange of checks? A. Well, might have been exchange of checks or he might have drawn on the Sonnenfeld Millinery Company, and paid them in a few days or maybe a month later—anyway, they were squared.

"Q. But just how they were squared you don't know? A. No, they were taken off the slip when they were squared.

"Q. Then you think they were on the original slip? A. Whenever he owed us anything and as long as he owed us anything, it would show on the slip, yes."

To permit mere copies of certain items or copies of accounts from which other items of equal importance are omitted, to be admitted as evidence, would

open the door for gross frauds. Therefore the purported copies of cash drawer slips should have been excluded by the court. [1 Wigmore on Evidence, sec. 758.]

The facts in this case do not bring it within the rule announced in Stephan v. Metzger, 95 Mo. App. 609, nor Anchor Milling Company v. Walsh, 108 Mo. 277.

The evidence is undisputed that Adolph Rosenthal directed the bookkeeper, Meyer, not to enter the cash drawer slips on the books of the Sonnenfeld Millinery Company, although an account in the books of the company had been set apart for that purpose. When it was determined to turn the slips over to the succeeding firm (which could have had no interest in them, as they affected only the plaintiff and defendant), Adolph Rosenthal and Meyer seem to have copied from the cash drawer slips just such items as they thought would build up a cause of action in favor of plaintiff against defendant.

The very method in which these so-called cash drawer slips were kept, "copied," and then lost, coupled with the fact that the Sonnenfeld Millinery Company during 1892, 1893 and 1894 was borrowing money from defendant almost daily to keep out of bankruptcy, renders the so-called copies of cash drawer slips valueless as evidence, even if they were admissible under any rule of law.

Defendant denied borrowing any money from the plaintiff between March 18, 1892, and October 27, 1894, and after carefully weighing all the competent evidence on that issue, we are convinced that plaintiff's claim as to the loans alleged to have been made after March 18, 1892, is not proven.

The referee found that the plaintiff loaned to defendant during 1892, 1893 and 1894 the aggregate sum of $5645.35, and the trial court having approved that finding, its judgment is to that extent erroneous.

This brings us to a consideration of the contract of January 3, 1891, acknowledging an indebtedness of $11,573.74 and providing for loans alleged to have been made subsequent to its execution and during the year 1891.

The referee found that the defendant owed plaintiff on the contract $16,648.86, which of course covered the orignal indebtedness mentioned in the contract ($11,573.74) and also $5075.12 in addition thereto, as representing loans made after the contract was executed and during the year 1891. Appellant strenuously insists that there is no evidence to sustain the finding of the referee that $5075.12 was loaned by plaintiff to defendant in the year 1891 subsequent to the execution of the contract, and that so much of the judgment as rests upon that finding is erroneous.

Loans in 1891.

Defendant testified that after executing the contract he did not borrow any more money from plaintiff or the Sonnenfeld Millinery Company during the year 1891. He, however, omitted to explain why he failed to obtain from the plaintiff the additional loans called for in the contract, amounting to $5426.26. Defendant further testified that after his failure, which occured about the year 1888, he obtained some money from the Sonnenfeld Millinery Company for which he invariably gave notes. The force of his testimony at this point is somewhat weakened by an admission that he did borrow for his company from the Sonnenfeld Millinery Company $10,474.40 during the year 1891, for which loan no note was given until November 10, 1894. As he borrowed money from the plaintiff for his company during 1891 without giving a note therefor until 1894, it is not unreasonable to suppose that he also borrowed from her individually during that period without giving his note.

Plaintiff testified that she loaned money to defendant during the year 1891, both individually and

through the Sonnenfeld Millinery Company, "sometimes as often as every two weeks and sometimes every month." Her memory as to dates and amounts was defective, but her evidence has some probative force when considered in connection with her bank account which shows that she drew out of the bank more than $30,000 during 1891. Unquestionably at that time she had the money to make loans.

The contract itself shows that the defendant intended to borrow $5426.26 more from plaintiff during 1891; so we have the concurrence of defendant wanting and needing more money during 1891 and the plaintiff with the money which she was willing to loan to him at that time, and no attempt on the part of defendant to explain why the contract was not performed and the loans made.

The financial condition of defendant does not appear to have undergone any change during 1891 whereby he would not need the money which plaintiff had agreed to loan him and which he had agreed to borrow. In fact, it appears that as late as January 16, 1892, defendant was greatly pressed for ready money; on which day he wrote a letter from New York (hereinbefore set out) making a most urgent appeal to Adolph Rosenthal for a loan of $6750 to pay off the very indebtedness mentioned in the contract, to-wit, the note to the German Exchange Bank of New York, for which he had pledged 147 shares of the stock of his company. When that letter was written, Adolph was in charge of practically all of plaintiff's business. In the letter defendant mentions plaintiff's name and expresses a desire to protect her money, so it was evidently intended as a joint appeal to her and Adolph. That letter when diligently considered throws more real light on the issue now under consideration than all the oral evidence in the case. In it, defendant appears to have urged every reason and made every argument he could think of to induce Adolph to send him the $6750 to help him over-

come a serious financial difficulty; but nowhere in that letter does he mention the contract of his sister (plaintiff) to loan him more money. If defendant had not already received the money which plaintiff had contracted to loan him in 1891 ($5426.26), he would have been almost sure to have referred to that contract as a ground for asking for more money. The fact that he urged so many other reasons why the loan should be made without referring to the contract, is a strong circumstance indicating that he had already received the money which plaintiff had contracted to loan him during the year 1891. It will also be noted that defendant, through the letter, offered the same class of security which the contract called for.

From the foregoing facts we find that there is substantial evidence to sustain the finding of the referee that there was due on the contract a balance of $16,648.86 on February 1, 1892. [Snoqualmi Realty Company v. Moynihan, 179 Mo. 629.]

The evidence shows that the defendant was on the books of the Sonnenfeld Millinery Company as a debtor prior to February 1, 1892. On that date the balance of $16,648.86, which the referee found represented his indebtedness to plaintiff, was transferred to the "Adolph Rosenthal Special Account," on a new ledger.

At the trial when plaintiff was trying to prove by the new ledger that she had made loans to defendant during the years 1892, '93 and '94, the following testimony was given by the bookkeeper, Meyer:

"Q. I. B. Rosenthal did not have an account with the Sonnenfeld Millinery Company in its books, did he? A. He did in a previous ledger.

"Q. You don't know of any money loaned by the Sonnenfeld Millinery Company to I. B. Rosenthal, do you? A. Yes, and it appears under the name of 'Adolph Rosenthal, Special Account.'

"Q. How do you know it appears under the name of 'Adolph Rosenthal, Special Account?' A. Because I posted it, and transferred it from the old ledger into the new ledger. I know it because I did it myself.

"Q. At whose instruction did you transfer this account to the Adolph Rosenthal Special Account? A. I suppose it was Adolph Rosenthal who instructed me or told me to transfer it in that way. . . . The Adolph Rosenthal special account on page 15 of the ledger was really I. B. Rosenthal's account, but he did not want his name to appear in the books of the Sonnenfeld Millinery Company as owing any money, and for that reason the account was carried in that way. The name of I. B. Rosenthal appeared on the previous ledger, and charges were made to him. The items $16,648.86 came from the previous ledger."

At a subsequent period in the trial the plaintiff introduced the books of the Sonnenfeld Millinery Company in evidence. The record does not
Evidence Omitted. show just what books were introduced. Presumably it was the books of the company kept during the year 1891, as it appeared that the subsequent books were already in evidence. Appellant has not brought up any abstract of the books of the Sonnenfeld Millinery Company kept during the year 1891, consequently, we have no knowledge of what those books contain. It does appear quite clearly from the testimony of Meyer that there were charges on said books against the defendant and that a balance of that account on February 1, 1892, showed that defendant was indebted to the plaintiff in the amount found by the referee.

If the entries in the books of the Sonnenfeld Millinery Company for the year 1891 do not support the finding of the referee, that fact could have easily been shown by defendant by bringing up an abstract of that

part of the book entries relating to plaintiff's transactions with defendant.

We do not wish to be understood as holding that the mere item of the balance or total copied from the book of accounts shown to exist on February 1, 1892, would establish an indebtedness against the defendant. However, that item, together with the evidence of bookkeeper Meyer, does unmistakably point back to an open account against defendant prior to February 1, 1892, and for aught that appears in the abstract before us, it may have furnished a complete basis for the referee's finding.

The burden was upon the defendant to show that the judgment is not supported by the evidence, and we cannot convict the referee or the trial court of error in that regard when all the evidence is not before us.

The books above mentioned were seen by the referee and the court, and for aught that appears in the record, may fully establish the fact that defendant borrowed from plaintiff after the contract was signed, and during the year of 1891, the sum of $5075.12.

Defendant vigorously assails the action of the trial court in permitting plaintiff to amend her petition after judgment so as to make it conform **Amendment of Petition.** to the evidence and rest upon the contract introduced by the defendant. He contends that this amendment substituted an entirely new and different cause of action to which he was not given an opportunity to make a defense.

In support of this insistence defendant has cited a large number of cases of this and other states containing phraseology which tends to support his contention, but, upon examining the authorities cited, we find they are not in point. It is undoubtedly true that a litigant cannot sue upon one cause of action and recover upon another. There is no such issue in this case.

Plaintiff's original petition charged that defendant executed a contract in which he acknowledged an

indebtedness of $16,648.86 for money borrowed, while her petition as amended rests upon a contract which recites an indebtedness of $11,573.24 for money borrowed, and a further indebtedness of $5426.26 to be borrowed after the contract was signed; and the referee found that a large part of the last named item, to-wit, $5075.12, was borrowed by defendant pursuant to the contract. The original petition purports to declare upon a contract dated about a year later than the one upon which the amended petition is based. Did these amendments amount to a new cause of action, and does the proof support the petition as amended?

In Clarkson v. Lee, 133 Mo. App. 53, it was held that a petition declaring upon a lease dated in 1902 was properly amended so as to declare upon a lease dated in 1900.

In City of Farmington v. Telephone Company, 135 Mo. App. 697, it was held that a petition counting upon an ordinance which provided for payment of rent for use of a street, was properly amended so.as to count upon a contract for the payment of such rent, the collection of rent for use of the street being the end sought in both petitions.

In McVicker v. Beedy, 31 Mo. 314, it was held that a petition counting on a foreign judgment could be so amended as to declare upon a debt for which a foreign judgment was given.

In Little v. Fairchild, 195 Pa. St. 641, it was held that a petition averring the sale of merchandise on a day mentioned, was properly amended so as to allege that the sale took place on the date designated in the first petition, *"or within six years before bringing this suit."*

We do not think it necessary to multiply citations. The amendment of the petition in this cause did not amount to the substitution of one cause of action for another. Both petitions were for borrowed money, and the date or phraseology of the contract upon which

that money was borrowed is of little consequence to defendant, so long as he was not misled as to the defense he was required to make.

In the case at bar defendant was in possession of the contract declared upon in the petition as finally amended. The court found that there was no other contract between the parties, and the evidence abundantly sustains that finding.

From the very inception of this action, the defendant had every reason to know and believe that if the plaintiff recovered at all, she must recover upon the contract which he introduced and which provided only for loans to be made during the year 1891. Without any objection or obstruction on the part of plaintiff, defendant put in his evidence tending to prove that he did not, after signing the contract, borrow any additional money from plaintiff during the year 1891. He even went back of 1891, and showed all his business transactions with plaintiff during 1889 and 1890. If the plaintiff had amended her petition so as to declare upon a contract with which defendant was not familiar when the trial was begun, there would be some reason back of the eloquent arguments of his resourceful attorneys, but such is not this case.

**Defendant not misled.**

We are commanded by Sec. 1865, R. S. 1909, to so construe the code, "as to discourage, as far as possible, negligence and *deceit,* to prevent delay, to secure parties from being misled, to place the party not in fault as nearly as possible in the same condition he would be in if no mistake had been made, *to distinguish between form and substance,* and to afford known, fixed and certain requisitions in place of the discretion of the court or judge thereof."

The foregoing enactment must have been written by someone who had been through a case just like the one at bar.

Sonnenfeld v. Rosenthal.

.The defendant was ordered by the court to produce the contract described in plaintiff's original peti-

Order to
Produce
Contract.

tion, and in response to that order and as an excuse for disobeying it, asserted that there was "no such contract in existence." If in that assertion he was not guilty of deceit, then that word has no meaning. The law does not contemplate that an order to produce a paper shall describe that paper with the accuracy required in an indictment. It is only necessary that the order to produce should describe the paper with sufficient particularity to inform the defendant of what is wanted. In this case there being only one contract between the parties of the character sued on, it is unbelievable that the defendant misunderstood the order. [McDowell v. Aetna Ins. Co., 164 Mass. 444.] It is very plain that defendant deliberately tried to mislead plaintiff by endeavoring to make her believe he did not have a contract in his possession and force her to put in her evidence without knowing the contents of said contract. Because that deception did not bear the fruit it was intended to produce he now insists that the judgment should be reversed.

Defendant's objections to the amended petition and his efforts to strike out were properly overruled.

The contract was executed January 3, 1891, and the indebtedness therein recited did not become due

Limitation.

until January 3, 1893. This suit was instituted September 1, 1902, and consequently, plaintiff's action on the contract was not barred by the ten-year Statute of Limitations.

There is other evidence in the record which indirectly throws some light upon the financial condition of the plaintiff and defendant and their dealings with each other between the years 1888 and 1905. We have considered that evidence, but do not deem it of sufficient importance to justify its insertion in this opinion.

With the loans which plaintiff claims to have made to defendant during 1892, 1893, and 1894 disallowed, the account between plaintiff and defendant is as follows:

To amount due plaintiff on the contract January 1, 1892 ........................$16,648 86
To interest on $11,573.24 of said amount from date of the contract (January 3, 1891) to Nov. 10, 1897 (6 years, 10 months and 7 days at 5 per cent)...... 3,965 43
To interest on the remaining $5,075.12 from January 1, 1892, to November 10, 1897 (5 years, 10 months and 10 days at 5 per cent) .............. ................ 1,487 30

Total ............... ..........$22,101 59

By credit for coupler stock bought by defendant for plaintiff on November 10, 1897 ......... ................ 6,250 00

Balance due on contract .........$15,851 59

To interest on said balance from Nov. 10, 1897 to July 22, 1902 (4 yrs. 8 Mo. and 12 days at 5 per cent) .............. 3,725 13

Total due July 22, 1902 ..........$19,576 72

By credit for defendant's interest in Kansas City real estate sold July 22, 1902..... 2,916 67

Balance ............ ..........$16,660 05

To interest on balance of principal ($15,-851.59) from July 22, 1902, to date of judgment, July 22, 1907 (5 years, at 5 per cent) ........................... 3,962 90

State ex inf. v. Amick.

To amount of promissory note and interest
    thereon ................. .... ......... 1,471 50

Total amount due plaintiff on date
        of judgment ...............$22,094 45

On this last named amount defendant is en-
    titled to credits for the aggregate
    amount allowed on his counterclaims,
    with interest thereon to date of the
    judgment ............ ..... ........ 17,729 01

Final balance due plaintiff .......$ 4,365 44

The judgment will therefore be reversed and the
cause remanded, with directions to the circuit court to
enter judgment against defendant for four thousand,
three hundred and sixty-five dollars and forty-four
cents ($4365.44), with interest thereon from the date
of the judgment in the circuit court (July 22, 1907) at
the rate of five per cent per annum. It is so ordered.

*Ferriss* and *Kennish, JJ.,* concur.