ALICE A. NALL, Executrix of GEORGE C. NALL, Appellant, v. W. J. BRENNAN and J. M. BRENNAN.—23 S. W. (2d) 1053.

Division One, February 3, 1930.

*Earl M. Pirkey* for appellant.

*Taylor, Chasnoff & Willson* for respondents.

ELLISON, C.—This action was brought by the plaintiff as executrix of the will of George C. Nall, deceased, to recover money alleged to have been lent by the testator to the defendants, W. J. Brennan and J. W. Brennan. The verdict and judgment being for the defendants, the plaintiff has appealed.

The petition alleges that between November 12, 1919, and May, 1920, the defendants received from the said George C. Nall, as a loan, the sum of $12,500, which amount they promised and agreed to repay to him within ninety days; that payment was demanded after the same became due, and default made. It further recites the due appointment and qualification of the plaintiff executrix. The answer was a general denial. The respondents' statement of the evidence is a fair one and is adopted with slight changes made in it.

The main witness for the plaintiff was the attorney for the Nall estate, John E. Turner. He testified that in the spring of 1919 he had been interested in the oil business in the shallow oil fields of Kentucky, and had discussed these fields with his friend, the testator, George C. Nall. In April or May, 1919, Nall brought to his office W. J. Brennan, then a stranger to Turner. Nall seemed to be under the impression that Turner had had experience in the oil business and wanted to talk things over. They inquired of Turner about the situation in the shallow oil fields of Kentucky and asked his ideas about the probabilities of making money there. It was mentioned that W. J. Brennan wanted to borrow from Nall some money for himself and his son J. M. Brennan, for use in the purchase of the Meador oil lease in Kentucky, but that W. J. Brennan did not know how much they would need. Turner said Nall and Brennan discussed the Meador lease, the purchase price of which, according to Turner, was $13,500, payable $1,000 down and the balance in monthly payments of $2500 each. Turner testified W. J. Brennan said they could repay the money within ninety days after the last payment, and that Nall agreed that he would let them have the money.

Turner further testified that when the last $2500 payment on the lease was to be made, in April, 1920, W. J. Brennan and Nall again came to his office and Brennan asked Nall for a check for $2500, but Nall didn't have the money. Brennan said he would take Nall down to the National Bank of Commerce and arrange for Nall to borrow the money. They went to the bank and borrowed the money. Nall and Brennan both signed the note. On this occasion Nall stated to Brennan he had now let him have a total of $12,500.

Turner further testified that in the first conversation in Turner's office Brennan and Nall said they did not want to be bothered with the details of managing the property, and that those matters would be turned over to and handled by J. M. Brennan. Turner said that, not being asked to do so, he prepared no contract and made no memorandum of the matter and refrained from suggesting to Nall there should be some written evidence touching the proposed loan. He further said that in the same conversation it was understood Nall was to invest $1000 in the Meador lease, and when the lease was purchased and paid for it was to belong to the Brennans.

Turner further declared that after Nall's death he, as the attorney for the executrix, called upon J. M. Brennan and inquired about payment of the loan, nobody else being present. Brennan did not deny owing the money and promised to repay it. Alfred Nall, a son of the testator, gave testimony to the same effect, concerning a conversation he had with J. M. Brennan on another occasion.

Turner identified, and appellant introduced in evidence, three bank checks given by George C. Nall, all payable to and indorsed by J. M. Brennan; one being for $1,000, dated November 12, 1919; another for $2500, dated December 11, 1919, and the third for $2500, dated March 17, 1920, and also a note given in renewal of the note made by Nall and Brennan to the National Bank of Commerce in April, 1920. The appellant also offered to introduce a book of check stubs, containing check stub No. 1613, on which was written the following: "No. 1613, Jan. 13, 1920, to Brennan oil, 2500.00;" also another book of check stubs, containing check stub No. 1631, on which the following was written: "No. 1631, 2-15 1920, to J. M. Brennan Oil Co., 1500.00." Objections being made to these two exhibits, they were excluded by the court, the plaintiff duly excepting. All these exhibits taken together showed payments running along at approximately monthly intervals, aggregating $12,500.

The respondents were introduced as witnesses and an attempt was made to show by both of them that the $12,500 in suit was not lent to them, but since they were of limited competency under the statute (Sec. 5410, R. S. 1919) they were permitted to testify to nothing that occurred prior to the probate of the will. Being thwarted in this effort to deny directly and categorically that the money was loaned to them, the respondents were forced to make their case by evidence from other witnesses tending to show that the $12,500 in controversy was advanced by Nall to the Brennans for the purpose of having them buy the Meador lease for *him*, not for themselves.

The respondents produced a number of witnesses, including George Threadcraft, who was doing part-time bookkeeping for Mr. Brennan at 6180 Delmar Avenue in 1919 and thereabouts. The Brennans were

in the grocery business in St. Louis, with one store at 954 Goodfellow Avenue, where W. J. Brennan was in charge, and another at 6180 Delmar Avenue, which was under the management of J. M. Brennan. Nall lived at 6925 Delmar Avenue, about a half mile distant from the latter store, in which he was a frequent visitor. Nall was in his fifties, retired, and not actively engaged in any business other than investing his money .from time to time.

The respondents' evidence showed that in 1919 the price of oil was from $3 to $3.50 a barrel and that at that price business in the shallow fields of Kentucky could be conducted profitably by well managed companies with enough properly operated wells. It showed also that the Brennans had organized the Cadillac Oil & Gas Company and were operating a Patton lease in the Kentucky field.

It was shown by the testimony of Threadcraft that J. M. Brennan brought the Meador lease ·to the attention of George Nall and after some discussion 'about it Nall instructed J. M. Brennan to purchase the lease for him. This was in November or December, 1919. Thereupon, on December 5, 1919, in pursuance of the discussion mentioned and of Nall's suggestion, the organization of a Missouri corporation with an authorized capital of $100,000, called the Nall Oil Company, was effected by putting in at $60,000 the Meador lease purchased in J. M. Brennan's name from one Gus Bartlett. The incorporators of the Nall Company were George C. Nall, J. M. Brennan and Threadcraft. Nall was president. W. J. Brennan had no interest in this company. The issued stock went: 2995 shares to Nall and his family, ten shares to Threadcraft for services as bookkeeper, and 100 shares to Bartlett, he having agreed to accept $1,000 in stock and $12,500 in money in payment for the Meador lease.

The evidence showed that after the lease was obtained as above set out and transferred to the Nall Oil Company, the company had no money and was unable to raise any money or to sell stock to raise money to develop the Meador lease and drill wells thereon. In that situation Nall suggested that, since the Cadillac Oil & Gas Company had the Patton lease, which had cost about $14,000, and since the Cadillac company was able to sell its stock and raise money, the two companies be combined and then proceed with the development of the Meador lease. At this time Nall owned no stock in the Cadillac Company. After some discussion between Nall and the Brennans it was decided to put the Meador lease into the Cadillac Company; to increase the stock of that company from $60,000 to $150,000; and to issue $30,000 of its capital stock to George C. Nall, $30,000 to W. J. Brennan, $30,000 to J. M. Brennan, 250 shares to John E. Turner for legal services, and 100 shares to George Threadcraft for services as secretary and bookkeeper.

After the consolidation, the Cadillac Company proceeded with its operations, deriving its funds from the sale of stock and the sale of oil from its wells, and spent all-told about $26,000 in the development of the Meador lease. In this enterprise Nall and the Brennans maintained business relations up to the time of Nall's death in 1922. On his visits to the property Nall prepared advertising matter, directed operations, paid out money and was repaid therefor. He corresponded with J. M. Brennan and advised him of the progress and prospects of the enterprise. He had Brennan sell some 900 shares of stock for him and permitted him to retain and deduct a liberal commission from the proceeds. So far as shown no one ever heard Nall during this time refer to any loan made by him to the Brennans or claim that the Brennans owed him any money or request either of them to repay any loan.

Robert B. Anderson testified that he was employed by Nall and the Brennans to look after their property in Kentucky as manager. Nall visited the lease while Anderson was in charge, and told Anderson that he owned one-third of the stock of the Cadillac Company, and that if the wells proved a success he would own it all before long. He said nothing about the Brennans owing him any money. Another witness, Hugh Huntsman, testified that Nall employed him in Kentucky to handle the Meador lease and Nall informed him he had bought the lease and had formed a company.

To all the testimony and matters in defense as offered from time to time the appellant's counsel objected for the stated reason that the same was immaterial, incompetent, was outside the issues as framed by the pleadings and did not tend to show whether the loan was made or not. Upon the overruling of his objections he duly excepted and saved the exceptions.

I. The appellant's position with reference to the evidence given for respondents is that none of it was admissible because it was new matter and the answer contained only a general denial. there being no plea of confession and avoidance. Several authorities are cited, of which Kelerher v. Henderson, 203 Mo. 498, 511, 101 S. W. 1083, 1086, is typical. These cases lay down the rule, which cannot be gainsaid, that new matter must be affirmatively pleaded, but they have no application here, as we shall try to show.

Turner testified that in April or May, 1919, Nall agreed to loan the Brennans $12,500 with which to buy the Meador lease. They were to repay the money in ninety days and the lease was to belong to them. Nall was to have no interest in it except possibly to the extent of $1,000. The appellant claims the $12,500 was advanced by Nall to the Brennans in separate payments between November,

1919, and April, 1920. The evidence for the respondents was that in November or December, 1919, at the very beginning of this same period Nall instructed J. M. Brennan to buy the Meador lease for *him*. This was done and the Nall Oil Company was organized. Its articles of incorporation was executed on December 5, 1919, showing the Meador lease to be its chief asset and Nall to be the owner of practically all its issued stock. Without going further, this certainly is substantial evidence having a tendency either (1) to prove the arrangement testified to by Turner was not carried out, and that Nall later decided to buy the lease himself, (2) or else to contradict Turner and show there never was any such arrangement. This went to the very existence of the cause of action and could be shown under a general denial.

In Enright v. Schaden (Mo.), 242 S. W. 89, 92, it is said: "The rule is that, if a cause of action has never existed, the proper answer is a general denial and any evidence which will show that it never had legal existence is admissible under such denial. [Greenway v. James, 34 Mo. 326; Northrup v. Ins. Co., 47 Mo. 435, 4 Am. Rep. 337; Hudson v. Railroad, 101 Mo. 13, 14 S. W. 15; Cushing v. Powell, 130 Mo. App. 576, 109 S. W. 1054.]"

In the Cushing case, last supra, l. c. 578, the rule is stated in a somewhat broader scope, in part as follows: "The law of pleading is well established in this State that defenses which are denominated new matter and which must be specially pleaded are only those matters which have arisen since the cause of action arose. There is no such thing as 'new matter' to that which never had legal existence. . . . If a cause of action has not existed, the proper answer is a general denial and any evidence which will show that it never had legal existence is admissible under such denial. . . . Whatever is necessary for a plaintiff to prove in order to make out his case is met by a general denial."

It is true some of the occurrences shown in evidence in this case came to pass after the appellant's cause of action arose, according to the testimony in her behalf—that is, after the money was advanced by Nall. But these occurrences were links in a connected and continuous chain of events which tended to show the money was not furnished in the beginning as a loan. This went to the whole cause of action and was not in any sense matter in confession and avoidance.

II. The appellant assigns error in the admission of evidence showing George C. Nall's acts and correspondence respecting the oil companies and their organization and operation, asserting it had no bearing on the issues and tended to mislead the jury. This evidence related to the conduct and statements

574

of Nall and various circumstances, all of which tended to negative the contract sued on and the existence of the alleged debt from the outset. It was not improperly admitted since under the rules of evidence a negative fact may be proved by negative evidence. [Stotler v. C. & A. Ry. Co., 200 Mo. 107, 137, 98 S. W. 509, 518; Loughlin v. Marr-Bridger Grocer Co. (Mo. App.), 10 S. W. (2d) 75, 81.]

In support of this assignment the appellant cites State ex rel. Cent. Coal etc. Co. v. Ellison, 270 Mo. 645, 653, 195 S. W. 722, 724; Pyrtle v. International Shoe Co. (Mo. App.), 291 S. W. 172; Moore v. Dawson (Mo. App.), 277 S. W. 58; Vance v. Morrish (Mo. App.), 279 S. W. 173, and cases from other states. None of these cases is in point. The Ellison case says instructions must be within both the pleadings and the proof; the Pyrtle case holds in a suit on contract · evidence that similar· contracts, some performed and others not, made by one of the parties with a stranger to the record, are inadmissible; Vance v. Morrish is a suit in unlawful detainer presenting no facts or issues similar to those in the instant case; while Moore v. Dawson is opposed to appellant's position and supports that of the defendants on this and other controverted questions presented on this appeal.

III. In passing upon the alleged error in the exclusion of the check stubs offered in evidence by appellant and set out above *in haec verba,* it will be unnecessary to consider whether the excluded evidence falls within the purview of the statutes pertaining to books of account (Secs. 5410 and 5411, R. S. 1919), since in any view of the matter the ruling on the facts presented here would be the same. On this proposition the affirmative was held in Fulkerson v. Long, 63 Mo. App. 268, 271, though that case appears to be out of line with the weight of authority at large. [42 L. R. A. (N'. S.) 727, note; 125 A. S. R. 852, note.] The general rule seems to be, further, that in the absence of a statute to the contrary the payment or loan of money is not properly the subject of a book charge. [10 R. C. L. sec. 384, p. 1187; 3 Wigmore on Evidence (2 Ed.) sec. 1539, p. 289; Gregory v. Jones, 101 Mo. App. 270, 283, 73 S. W. 899, 902.]

But be that as it may, the check stubs offered in the instant case were not shown to have been kept in the regular course of a business, the entries being made at or about the time of the several transactions and pertaining to the business. Some of the items are for such things as cigars, auto insurance, telephone, a toy, canned fruit, etc. Appellant's counsel stated at the time he would supplement the stubs by further testimony "linking the defendants, or each defendant, with these · amounts of money and at that particular

time;'' but he did not say he would show how the stub books were kept and what the course and practice was in making the entries, or whether they were made in the course of any business. Lacking this authentication we think they were inadmissible. [Bader v. Ferguson, 118 Mo. App. 34, 37, 94 S. W. 836, 837-8; Anchor Milling Co. v. Walsh, 108 Mo. 277, 18 S. W. 904, 32 A. S. R. 600; 3 Wigmore on Evidence (2 Ed.) sec. 1523, p. 272, et seq.]

There is another reason why the stubs were properly rejected by the court. They were not fair on their face, that is they did not show intelligently and with reasonable definiteness the facts sought to be established by them, namely that the amounts appearing in the two items were advanced *to the respondents* as a *loan*. One stub showed a check for $2500 ''to Brennan oil;'' the other a check for $1500 ''to J. M. Brennan Oil Co.'' This indicates the checks, certainly the latter one, were issued to a stranger, or strangers, to the suit. Further, bearing in mind there was no dispute about the fact that Nall invested $12,500 in the Meador lease through the Brennans, and that the only question is whether he loaned the money or put it in for himself, it will be seen at once the check stubs throw no light on that issue. In Sonnenfeld v. Rosenthal, 247 Mo. 238, 259, 152 S. W. 321, 327, an action for money lent, it was said:

''The books of the Sonnenfeld Millinery Company showing loans to 'Adolph Rosenthal, Special,' were not competent evidence to establish a loan made to defendant I. B. Rosenthal, for the obvious reason that they did not purport to contain a record of loans to defendant. This proposition is too plain to need citation for its support.''

IV. Error is predicated on the refusal of instruction numbered 6 offered by the plaintiff, as follows: ''The court instructs the jury that the fact that stock of the Cadillac Oil & Gas Company or the Nall Oil Company or of both was issued  to George C. Nall does not affect plaintiff's right to recover if the jury find the facts hypothesized in instruction number one to be correct.''

The respondents say the instruction singles out and comments upon two evidentiary facts, leaving out of view related circumstances which connect and support them; that it distorts their case and minimizes the facts selected for comment. We think the instruction was unnecessary and is subject to the criticism urged. Appellant concedes instructions must not comment on detached portions of the evidence, but insists this instruction merely declared the legal effect of the evidence pointed out, citing Wilkerson v. Hunt (Mo. App.), 245 S. W. 615, 616.

In that case the executors of the will of Z. B. Hunt sued the maker of a note to recover money which the estate had been forced to pay thereon because (as they claimed) the testator had signed the note as surety. The maker defended on the ground that *he* was the surety and the testator the principal, asserting further that the testator gave the note to obtain money with which to pay off his indebtedness to him (the maker.) The court gave an instruction saying the fact that the testator was indebted to the defendant was not, of itself, evidence that the note was not executed by the defendant as principal; and the Court of Appeals said the instruction merely declared the legal effect of this evidence. From something occurring during the trial the circuit court may have thought this instruction was necessary to exclude the idea that the defendant was not bound if the testator also owed him, though we must admit the opinion fails to disclose any such occurrence; if there was nothing of that sort in the case we can see no excuse for the instruction.

But whether the Wilkerson case is right or wrong under its facts, we are clear the instruction in the instant case was improper. In effect it told the jury if they believed the evidence for appellant it was immaterial whether Nall had stock in the Nall and Cadillac companies or not. The fact that Nall was a stockholder in these companies had no bearing on the case and no tendency to defeat the appellant's claim, except on the theory that he bought the stock with the $12,500 in dispute instead of loaning it to the respondents as the appellant claimed. That was the sole issue and it was fully covered by appellant's Instruction I.

V. Appellant charges error in the giving of respondents' instruction numbered III on the ground that "it broadened the issues made by the pleadings and gave the jury a roving commission." The consideration already given to the pleadings sufficiently disposes adversely of this criticism. The instruction properly confined the appellant's recovery to the cause of action pleaded in the petition and hypothesized in plaintiff's instruction numbered 1.

VI. The court gave for respondents Instruction 4 which in substance told the jury if they should find that Nall directed J. M. Brennan to purchase for him the Meador lease and furnished him with $12,500 to pay for the lease, and that Brennan purchased it for Nall and paid for it with the money so furnished, and that thereafter Nall caused the lease to be transferred to the Nall Oil Company and accepted shares of stocks of said company in full consideration thereof, the verdict should be for the defendants.

Appellant's assignment of error in this connection is that the instruction is broader than the pleadings. This assignment also is covered by the preceding discussion. Since the instruction hypothesized ultimate facts which, if found, would negative the legal existence of appellant's alleged cause of action and preclude her from a recovery thereon, it was within the scope of both the pleadings and the evidence, and there was no error in giving it.

The case was fairly tried. ·The judgment of the circuit court is affirmed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.