Bobby Lee PARKER, Appellant,

v.

Gayles R. PINE and Betty Pine
Lockard, Respondents.

No. WD 31267.

Missouri Court of Appeals,
Western District.

May 4, 1981.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1981.

Application to Transfer Denied
July 14, 1981.

J. Kirk Rahm, Warrensburg, for appellant.

Tom R. Williams, Warrensburg, for respondent Gayles R. Pine.

C. B. Fitzgerald, Warrensburg, for respondent Betty Pine Lockard.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

Appellant Bobby Lee Parker brought this suit against respondents Pine and Lockard for damages alleged to have resulted from the failure of respondents to execute their duties as trustees under the will of John M. Pfeffer, Sr. Although not separated into counts, the claims were divided between two time periods: March 22, 1973, the date of Pfeffer's death, to June 4, 1975, and from the latter date to the date of trial. A jury returned verdicts in favor of appellant and against Pine and Lockard as to the first time period, but awarded no damages. As to the second period, the verdict was in favor of appellant and against Pine only with damages of $5000. The court entered judgment for appellant against Pine and on

post-trial motion granted judgment n.o.v. in favor of Lockard. Pine has not appealed and the judgment against him for the second time period is not in controversy. Parker's appeal contests only the issue of damages sustained between March 22, 1973 and June 4, 1975 which, he contends, should have been allowed consistent with the verdict of liability.

Parker's eight points on appeal may be grouped for disposition into three principal subjects: Entitlement of Parker to damages as a matter of law upon the jury's verdict determining liability; erroneous admission of evidence on affirmative defenses not pleaded; and erroneous refusal of withdrawal instructions required to dispel false issues. Collateral and included points complain of irrelevant and prejudicial evidence admitted on cross-examination of Parker's witness and improper limitation of Parker's closing jury argument.

Some evidence in the case was disputed, but in broad outline the background of Parker's claims is uncontroverted, suffering more on this record from deficiencies rather than disagreements.

John M. Pfeffer, Sr. died testate March 22, 1973, leaving as a bequest to appellant, then 17 years of age, a 357–acre farm in Johnson County. Under the terms of the will, appellant's inheritance was deferred until he attained age 25. As trustees, Pine and Lockard were instructed to manage the farm for appellant's account, pay the expenses and provide for appellant's needs as in their judgment would be in his best interests.

Pfeffer was also survived by a son, John Pfeffer, Jr., who, prior to his father's death, had been conducting the actual farming operations on the Pfeffer holdings. The will named Pfeffer, Jr. as executor and devised to him another farm property. Pine was the attorney who drew the will and was a long time acquaintance of the family. Pfeffer, Jr. qualified as executor and employed Pine to represent the estate.

Apparently, some arrangement had previously existed between the Pfeffers, Jr. and Sr., as to crop shares and cash rent for

farming operations on the land titled in the name of Pfeffer, Sr. After the death of Pfeffer, Sr., his son continued to occupy the farms planting crops and pasturing livestock much in the manner as he had done before his father's death. No order was obtained from the probate court authorizing Pfeffer, Jr. to take charge of any real estate as executor.

Some evidence indicated that in the spring or early summer of 1973, following the death of Pfeffer, Sr., an informal agreement was made between Pine and Pfeffer, Jr. for the latter to continue farming the lands which Pfeffer, Sr. had owned. No distinction was noted or observed as to segregation of the trust property, the income it generated or the expenses incurred. Income from the trust property was deposited by Pfeffer, Jr. to his account as executor and expenses were similarly paid from that account. Presumably, these transactions were recorded in Pfeffer, Jr.'s settlements with the probate court. That information, however, is not before this court because the probate files, although introduced as exhibits at trial, have not been deposited here. Thus, under Rule 81.15, they must be regarded as immaterial.

In effect, by the arrangement with Pfeffer, Jr., Pine delegated his responsibility as trustee to manage the trust farm and account for income and expenses. Fred Parker, Bobby Lee's father,[1] was aware of the understanding and had no complaint as to the manner in which Pfeffer, Jr. worked the farm nor was there any claim that obligations for taxes, insurance and mortgage installments were not paid as they became due. The arrangement with Pfeffer, Jr. terminated in 1975. Pine thereafter let the farm to other tenants, collected rents and paid expenses, but limitation of this appeal to the judgment attributable to the first claim period ending June 4, 1975 eliminates the necessity for consideration of events after that date.

Respondent Lockard is Pine's daughter and is herself a lawyer. It was her testimony that during the relevant time period, she was either unaware of her designation as trustee or relied on her father's advice that she had no duties to perform. At no time did Lockard take any action as trustee and resigned the position November 11, 1975.

The gist of appellant's claim was that the trust property had the capacity to produce and did produce income between March 1973 and June 1975; that Pine and Lockard, because of their failure to execute the trust, have not accounted for the income; and that they are therefore liable to appellant for such income as appellant's evidence showed the trust property capable of producing if properly managed. In defense, Pine and Lockard contended that appellant or his representative were aware of and concurred in the arrangement with Pfeffer, Jr. and that all income was applied to defray expenses of the trust property even though such funds were not technically administered by the trustees.

Before each of appellant's points is considered individually, some statement of general rules applicable to trustees and pertinent to this case as a whole will serve to place the particular points in their appropriate perspective.

■ A testamentary trustee is bound to administer the trust in the same manner as the testator would have done, the trustee being the alter ego of the testator. *Bakewell v. Mercantile Trust Co.*, 319 S.W.2d 600, 605 (Mo.banc 1958). The duty of the trustee is to exercise the care, skill and diligence a person of ordinary prudence would exercise. *Jarvis v. Boatmen's National Bank of St. Louis*, 478 S.W.2d 266, 273 (Mo.1972); *Fairleigh v. Fidelity National Bank & Trust Co.*, 335 Mo. 360, 73 S.W.2d 248 (1934). A trustee is required to reduce

---

1. As early as 1970, Fred Parker had been appointed guardian for Bobby Lee. No explanation for this appointment appears in this record. The amended petition on which the case was tried was filed July 3, 1979, at which date Bobby Lee was 24 years of age and sui juris.

Advocacy of the lawsuit appears to have devolved upon Fred Parker who testified on his son's behalf at trial. Bobby Lee was at that time in the custody of federal authorities on narcotics charges. He did not testify or attend the trial.

to possession and conserve the trust assets and to protect the trust estate from loss and injury. *Baker v. Dale*, 123 F.Supp. 364, 368 (W.D.Mo.1954); *Covey v. Pierce*, 229 Mo.App. 424, 82 S.W.2d 592 (1935); *Morrison v. Asher*, 361 S.W.2d 844, 850 (Mo.App. 1962).

The presumption is that the trustee has acted in good faith and the burden of proof is on one questioning his action and seeking to establish a breach of trust. *Jarvis v. Boatmen's National Bank of St. Louis, supra; First National Bank of Kansas City v. Hyde*, 363 S.W.2d 647, 655 (Mo. 1962). The claim against a trustee for breach of trust is in the nature of a general demand for damages and depends on a showing by the cestui que trust that he has been deprived of a benefit or sustained an injury in consequence of the breach. 90 C.J.S. *Trusts* § 253 (1955). If the trustee breaches his trust, the beneficiary is entitled to recover (a) loss in value of the trust property attributable to the breach, (b) profit inuring to the trustee from the breach, or (c) loss of profit to the trust which would otherwise have accrued but for the breach. *Estate of Luyties v. Scudder*, 432 S.W.2d 210, 216 (Mo.1968).

## I

As to the issue of damages here, appellant contends alternatively that his motion for directed verdict awarding damages should have been sustained, or, failing that, he was entitled to a new trial because the jury verdict for zero damages was presumptively inadequate on the evidence. The argument proceeds on the following theory: Appellant's evidence conclusively showed that the trust property had an income productive value in pasture rent and crop shares; that actual cash income was received in addition by way of crop insurance loss and federal crop subsidy proceeds; that the trustees neither received nor accounted for that income and paid no expenses; therefore, as a matter of law on undisputed evidence, appellant is entitled to judgment against the trustees for the gross income which the trust property produced or should have produced during the period March 22, 1973 to June 4, 1975.

While the factual basis is present in this record to support the foregoing assertions that the trust property was or should have been income producing and that the trustees themselves collected no income and paid no expenses, the assertion of a conclusion that appellant must thereby be entitled to a recovery in damages ignores additional evidence also undisputed and materially affecting the decision.

According to Pine's evidence, which was not controverted by appellant, the trust property was burdened during the years in question with various debts including real estate taxes, both current and delinquent; federal estate taxes and debts of the decedent, the personal estate being insufficient to pay these obligations; installments on a mortgage loan debt secured by a deed of trust on both farms and current expenses for farming operations. At the conclusion of the period in question, all of the obligations had been paid or were current, the source of payment being the landlord's portion of crop shares and pasture rent as accounted for by Pfeffer, Jr. to the probate court,[2] and no cash balance remained. In sum, the jury could have found from the evidence that by the agreement between Pine and Pfeffer, Jr., the latter was authorized to pay and did pay from trust property income those expenses necessary to preserve the property from liens and foreclosure and that the income so generated, af-

2. The responsibilities of Pfeffer, Jr. as executor were the subject of a declaratory judgment suit decided October 9, 1975, after Pfeffer, Jr. had been succeeded by one Bozarth as administrator de bonis non. In that judgment, Pfeffer, Jr.'s action in paying the mortgage installments, estate taxes and other debts of the decedent from farm income was approved. The judgment also held that the inherited real estate of appellant and Pfeffer, Jr. should be charged equally with these expenses. Not decided was the ultimate accounting among appellant, the trustees and Pfeffer, Jr. which was, in reality, the issue in the present action. The question was further complicated because farm income was insufficient to pay all the debts, a balance having been advanced by Pfeffer, Jr. from personal funds.

ter deducting operating expenses, left no balance for the trust beneficiary.

In considering the propriety of directing a verdict for the plaintiff, the court views the evidence in the light most favorable to the defendant and disregards any unfavorable evidence or inferences. *Matter of Estate of Passman*, 537 S.W.2d 380 (Mo. banc 1976). A verdict may be directed for a plaintiff only in those rare cases where there are no genuine fact issues which should be submitted to a jury. *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83, 88 (Mo. App.1976).

Ordinarily, it is the jury's function to pass on oral evidence and the court is seldom justified in directing a verdict when proof depends on oral testimony. *Clayton Brokerage Company of St. Louis v. Lowrance*, 592 S.W.2d 218, 228 (Mo.App. 1979); *Hartford Accident and Indemnity Company v. Farmington Auction, Inc.*, 356 S.W.2d 512, 518 (Mo.App.1962). The cause may not be taken from the jury unless the evidence is so strongly against the defendant as to leave no room for reasonable minds to differ. *Alaska Federal Savings & Loan Association v. Hoffman*, 485 S.W.2d 118 (Mo.App.1972). Only in exceptional cases as where the defendant's evidence establishes plaintiff's claim has it been indicated that there may be an exception to the general rule against directing a verdict in favor of the party having the burden of proof. *Zagarri v. Nichols*, 429 S.W.2d 758, 760 (Mo.1968).

The amount of damages awarded to a successful party is primarily for the jury and its broad discretion in fixing the amount is conclusive on appeal, especially where the verdict has the approval of the trial court as evidenced by its overruling a motion for new trial. *Hoerschgen v. Dunnavant*, 546 S.W.2d 751, 754 (Mo.App.1977). With respect to granting or refusing a new trial, a large measure of discretion is vested in the trial judge who sits as an intimate observer of the whole chain of events. *Sunset Acres Motel, Inc. v. Jacobs*, 336 S.W.2d 473, 479 (Mo.1960). The jury's as-

sessment of damages is conclusive unless the verdict is so shockingly meager as to indicate that it resulted from arbitrary or prejudiced exercise of discretion. *Tile-Craft Products Co., Inc. v. Exxon Corporation*, 581 S.W.2d 886 (Mo.App.1979). If the damage award is founded on any reasonably rational basis, it will be upheld as responsive to the evidence. *Wells v. Bellman*, 531 S.W.2d 770, 771 (Mo.App.1975).

Appellant here assumes that the breach of the trustees' duty to take charge of the trust property, a conclusion implicit in the jury's verdict as to liability, necessarily entitles appellant to some damages. He therefore argues either entitlement to that award by the court, or a new trial to permit another jury to assess the amount. The contentions, however, are untenable because, as detailed above, the evidence amply justified the conclusion that Pine and Lockard, while in technical violation of their responsibilities as trustees, actually caused no loss and appellant suffered none. The jury so found and appellant's claim is foreclosed by the jury verdict.

## II

Appellant next complains that evidence of affirmative defenses tending to exonerate the trustees, to depreciate appellant's claim and to establish offsets was received over objection despite the absence of any pleading by Pine and Lockard setting up these defenses and that this was error which materially prejudiced appellant, particularly in his claim for damages. Evidence which appellant asserts amounted to proof of affirmative defenses was: Particulars of other litigation between Fred Parker and Pfeffer, Jr.; Parker's alleged agreement to permit Pfeffer, Jr., to farm the trust property; the failure of Parker to raise objections currently regarding the trustees' conduct; and the benefits which appellant received from the Pfeffer Estate as a legatee.

The evidence of other litigation informed the jury that appellant had brought an action against Pfeffer, Jr. claiming damages arising out of the farming operation on the

trust property, the same subject matter at issue in the present case. The evidence that Fred Parker had tacitly approved of the arrangement with Pfeffer, Jr. consisted of testimony that Fred Parker had been consulted and had agreed to the plan and had made no inquiry of his attorneys who were then representing him in the guardianship proceeding. The evidence of appellant's benefit as a legatee of the Pfeffer Estate demonstrated that trust property income when deposited to the executor's account actually inured to appellant's advantage because expenses were thereby defrayed which would otherwise have diminished his share as a residuary legatee.

■ An affirmative defense contemplates additional facts not included in the allegations necessary to support plaintiff's case and avers that plaintiff's theory of liability, even though sustained by the evidence, does not lead to recovery because the affirmative defense allows the defendant to avoid legal responsibility. *Layman v. Southwestern Bell Telephone Co.*, 554 S.W.2d 477 (Mo.App.1977); *Semo Grain Co. v. Oliver Farms, Inc.*, 530 S.W.2d 256 (Mo. App.1975). Any evidence which tends to show plaintiff's cause never had legal existence is admissible on a general denial even though the facts are affirmative, if and insofar as they are adduced only to negative the plaintiff's cause of action and are not by way of confession and avoidance. *Stein v. Battenfeld Oil & Grease Co.*, 327 Mo. 804, 39 S.W.2d 345 (1931).

■ The scope and extent of cross-examination in a civil case is discretionary with the trial court and wide latitude is to be allowed. *Harris v. Quality Dairy Co.*, 423 S.W.2d 8, 12 (Mo.App.1967); *Maul v. Filimon*, 315 S.W.2d 859, 866 (Mo.App.1958). The trial court's rulings with respect to the scope and extent of cross-examination will not be disturbed on appeal unless abuse of discretion is clearly shown. *Thigpen v. Dodd's Truck Lines, Inc.*, 498 S.W.2d 816, 818 (Mo.App.1973); *Krez v. Mickel*, 431 S.W.2d 213, 215 (Mo.1968). No hard and fast rule can be laid down regarding the extent cross-examination may go, but any pertinent inquiry having some reasonable relation or bearing on the issues in the case or tending to impeach or discredit the witness is generally proper. *Board of Public Buildings v. GMT Corp.*, 580 S.W.2d 519, 531 (Mo.App.1979).

■ The evidence of which appellant complains and which he contends should have been excluded because no affirmative defenses were pleaded and because the evidence was irrelevant and misleading was, in the main, offered, not because Pine and Lockard claimed not to be liable for appellant's loss, but because they sought to show that appellant had suffered no damage. The evidence was not by way of affirmative defense and was proper under a general denial. As to the evidence obtained from Fred Parker, his prosecution of another lawsuit against Pfeffer, Jr. and his acquiescence in the arrangement for Pfeffer, Jr. to farm the trust property, that testimony was elicited on cross-examination and was not only relevant to the claim of damages but was also pertinent on the issue of the witness' credibility.

### III

Finally, appellant argues that the trial court erroneously refused to give the jury three withdrawal instructions which appellant tendered. These instructions are interrelated with points earlier discussed on admission of evidence. In brief, the withdrawal instructions would have advised the jury not to consider in assessing actual damages any evidence that appellant benefited from the deposit of trust farm income to the Pfeffer Estate account, and evidence that appellant or Fred Parker agreed to the arrangement with Pfeffer, Jr. as to disposition of cash and crop rentals.

■ The giving of a withdrawal instruction rests within the sound discretion of the trial court and absent an abuse of such discretion, refusal to give a withdrawal instruction constitutes no basis for complaint. *Helming v. Adams*, 509 S.W.2d 159, 169 (Mo.App.1974). Ordinarily, it is not error to refuse a withdrawal instruction. *Norton v.*

*Johnson*, 359 Mo. 1214, 226 S.W.2d 689, 710 (1950).

In this case, there was no error in refusing the tendered instructions because, as considered earlier, the evidence which appellant contends injected false issues was actually pertinent and relevant on the question of appellant's damages and the reliability of his witness, Fred Parker. Moreover, the decision of the trial court to refuse the instructions lies within an area of broad discretion. No basis has been shown here to conclude that an abuse justifies appellate court intervention.

### IV

In a collateral point which requires mention, appellant complains that he was improperly restricted in closing argument on an issue of burden of proof. After the evidence had closed, appellant indicated an intention to argue that Pine and Lockard had the burden to show how much of the commingled farm income deposited to the estate account was derived from the trust farm and, failing that, the jury was to award appellant damages based on all the income. In denying the line of argument, the trial court aptly observed that the only source from which Pine and Lockard could adduce that proof was detail from the probate files which had been excluded from evidence at appellant's insistence.

Aside from the obvious unfairness of the proposed argument, the point fails because the trial court's authority to control argument is broad and a ruling is entitled to deference on appeal absent a clear abuse of discretion. *Beste v. Tadlock*, 565 S.W.2d 789, 791 (Mo.App.1978); *Best v. Fred Weber Construction Co.*, 525 S.W.2d 102, 107 (Mo.App.1975). None appears or has been shown here.

The judgment is affirmed.

All concur.