**WORLD ENTERPRISES, INC.,**
**Plaintiff-Respondent,**

v.

**MIDCOAST AVIATION SERVICES,**
**INC., Defendant-Appellant.**

**No. 50240.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 15, 1986.

Frank N. Gundlach, St. Louis, for defendant-appellant.

Gordon L. Ankney, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Midcoast Aviation Services (Midcoast) appeals from a $11,000.00 judgment entered in favor of World Enterprises (World) in an action for breach of a contract to repair. We reverse and remand.

World owned a 1963 twin-engine jet, known as a Sabreliner, which it used to transport corporate officers and employees. In July 1981, World sent its Sabreliner to Midcoast for the plane's mandatory one hundred hours maintenance inspection. Once the inspection began, Midcoast's personnel observed corrosion and cracks in the Sabreliner's center rib which made the plane unairworthy. To correct these problems, Midcoast was required to remove and send the center rib to its manufacturer, Rockwell International, for repair.

To remove the center rib, Midcoast had to detach the plane's wings. Once the wings were disassembled, Midcoast inspected their interiors and discovered extensive corrosion on the lower wing skin. Midcoast then began to grind out the wing corrosion. During this process, Midcoast discovered a crack in the wing's skin which it sought to remove by further grinding. Ultimately, Midcoast's repair attempt by grinding resulted in a hole in the plane's wing.

Thereafter, Midcoast proposed various methods to repair the hole in the wing. After consultation with both Rockwell International and Midcoast, World decided to

have the wing skin replaced by Rockwell. World then attempted to retrieve the Sabreliner but Midcoast refused to release possession of the plane until World paid for the plane's repairs and storage costs. As a result, in February 1982, World filed a four count petition under bailment, conversion, breach of contract, and replevin theories. Midcoast counterclaimed for breach of contract for repairs and the cost of storage. After filing a bond, World regained possession of the plane in April 1982 and removed the Sabreliner to Rockwell International where the damaged wing was replaced and other repairs and renovations were performed. In October 1982 all work was completed and World reacquired use of its plane.

Before trial, World dismissed three of its counts. Only its claim for breach of contract remained. In its pleadings for the contract claim, World alleged loss of use damages and other repair expenses. These issues were narrowed to the loss of use claim at trial.[1] The jury found for both parties, awarding Midcoast $70,263.00 in repair and storage costs and World $11,000.00 in loss of use damages. After judgment was entered on the jury's verdict, Midcoast motioned for a judgment n.o.v. on the $11,000.00 award in favor of World. The trial court overruled this motion and this appeal by Midcoast followed.[2]

On appeal, Midcoast challenges the trial court's denial of its motion for a judgment n.o.v. on the ground that World cannot recover for loss of use damages because the repair contract between the parties contains a provision denying Midcoast's liability for consequential damages. The specific contract language states:

15. LIMITATIONS OF LIABILITY. No penalty or liquidated damages clause of any description will be effective and binding upon [Midcoast] unless specifically approved in writing by an officer of [Midcoast]. IN NO EVENT SHALL [MIDCOAST] BE LIABLE FOR ANY

PROSPECTIVE PROFITS OR SPECIFIC INCIDENTAL OR CONSEQUENTIAL COMMERCIAL DAMAGES OR LOSSES. (emphasis in original).

Midcoast asserts that the loss of use of the Sabreliner is a consequential damage. Thus, Midcoast argues that World's cause of action must fail. We agree.

In opposition, World raises a number of objections to the liability limitation provision in the repair contract: (1) the provision constitutes an affirmative defense which Midcoast waived when it failed to plead it in its answer; (2) the issue of whether the provision precludes recovery for loss of use was a jury question; (3) the liability limitation provision does not apply to loss of use damages; and (4) the provision is unconscionable and against public policy.

## I.

World first raised its objection that the liability limitation provision is an affirmative defense at oral argument before this court. World contends that under Rule 55.08 an affirmative defense must be specifically pleaded or waived. Since Midcoast failed to assert the contract provision as an affirmative defense in its answer, World argues that the clause was not properly raised before the trial court. We disagree.

■ World's characterization of the liability limitation provision as an affirmative defense is incorrect. An affirmative defense is a defense which avers that even if the petition is true, the plaintiff cannot prevail because there are *additional facts* which permit the defendant to avoid legal responsibility. *Shaw v. Burlington Northern, Inc.*, 617 S.W.2d 455, 457 (Mo.App. 1981) The term "additional facts" contemplates new matter, *i.e.*, acts, transactions, or occurrences which do not form part of the original contract or transaction but those which have arisen since the plaintiff's

1. A second action is pending in another jurisdiction concerning the cost of repair issue.

2. World did not appeal the $70,263.00 judgment against it.

cause of action came into existence.[3] *Nall v. Brennan*, 324 Mo. 565, 23 S.W.2d 1053, 1056 (1929); 61A Am.Jur.2d *Pleadings*, § 153 at 153 (1981).

■ Since an affirmative defense by definition includes new matter or additional facts, Rule 55.08 requires such a defense to be pleaded in order to give notice to the plaintiff. *Schimmel Fur Company v. American Indemnity Company*, 440 S.W.2d 932, 939 (Mo.1969). If the plaintiff's cause of action never had a legal existence, however, the proper answer is a general denial. *Nall*, 23 S.W.2d at 1056. Thus, any evidence which will show that the plaintiff's cause never had a legal existence is admissible under a general denial even though the facts are affirmative insofar as they negate the plaintiff's cause of action and are not by way of confession and avoidance. *Parker v. Pine*, 617 S.W.2d 536, 542 (Mo.App.1981); *Layman v. Southwestern Bell Telephone Company*, 554 S.W.2d 477, 480 (Mo.App.1977).

■ In the present case, the liability limitation provision in the repair contract is not an affirmative defense. Contracts must be read as a whole. *Butler v. Centerre Trust Company*, 656 S.W.2d 831, 834 (Mo.App. 1983). The liability limitation provision is not a separate agreement reached between the parties but part of the original repair contract. Therefore, it cannot be considered an additional fact or a new matter which Midcoast waived when it did not plead the provision in its answer. *See United States For Use & Benefit of H & S Industries, Inc. v. F.D. Rich Company*, 525 F.2d 760, 767 (7th Cir.1975) (contractor's failure to plead as an affirmative defense a subcontract provision relieving it from certain responsibilities did not foreclose the contractor from relying on the provision which was part of the contract and not a separate agreement reached by the parties); *see also Gifford v. M.F.A. Mutual Insurance Company*, 437 S.W.2d 714, 718 (Mo.App.1969) (under policy which insured for loss of cattle by theft but excluded coverage for escape or mysterious disappearance of cattle, mysterious disappearance was not an affirmative defense).

■ In addition, World cannot claim lack of notice on the ground that Midcoast failed to raise the liability limitation provision before the trial court. In its motions for directed verdicts at the close of World's evidence and after all the evidence, Midcoast asserted that "the terms of the [repair] contract preclude[d] any recovery as a matter of law." Indeed, this provision was brought to the trial court's attention during the oral argument on Midcoast's motion for a directed verdict at the close of all the evidence. During this argument, counsel for both Midcoast and World argued whether the liability limitation provision barred recovery of consequential damages.

■ Furthermore, under its answer, Midcoast had an absolute right to raise any argument at trial tending to show that World never had a claim against it. *Parker*, 617 S.W.2d at 542. In its action for loss of use, World relied on the contract to repair the Sabreliner and cannot claim lack of notice of the liability limitation provision. During Midcoast's case in chief, the entire agreement was admitted into evidence. World did not object to the contract's admission. Since the whole contract was before the trial court, Midcoast had the right to raise the liability limitation provision to negate World's cause of action for loss of use.

## II.

■ In its next challenge to the liability limitation provision, World contends the tri-

---

**3.** Additional facts and new matter, when considered in the context of affirmative defenses, may be explained by the following example:

> [I]n an action for damages for nonperformance of a written contract, if the contract was valid, but had in some way been discharged, that would be new matter; but, if it was forged, the forgery would not be new matter and need not be pleaded. A showing of forgery would be a showing that the alleged cause of action never existed, and hence is fully covered by a simple denial.

*Cushing v. Powell*, 130 Mo.App. 576, 109 S.W. 1054, 1054 (1908).

al court did not err in denying Midcoast's motion for a judgment n.o.v. because the interpretation of the contract provision was a jury question. World argues that it was a matter for the jury to determine whether the provision precluded recovery for loss of use. We disagree.

Although World's argument presumes an ambiguity in the repair contract and its limitation of liability provision, none is evident. The clause provides that "[i]n no event shall [Midcoast] be liable for any . . . consequential commercial damages . . . ." Because this provision is susceptible only to one reasonable interpretation, it is clear and unambiguous. *Harris v. Union Electric Company,* 622 S.W.2d 239, 247 (Mo. App.1981). Therefore, the construction of the liability limitation provision was a matter for the court and not the jury. *Commerce Trust Company v. Howard,* 429 S.W.2d 702, 705–706 (Mo.1968).

### III.

■ World also asserts that the liability limitation provision does not preclude loss of use damages because such damages are not encompassed by the provision's reference to "specific incidental or consequential commercial damages or losses." We disagree.

Black's Law Dictionary defines consequential damages as "such damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." Black's Law Dictionary, 352 (5th ed. 1979). The Uniform Commercial Code defines consequential damages resulting from the seller's breach as any loss caused by the general or particular needs of the buyer of which the seller had reason to know at the time of contracting and could not reasonably be prevented by cover or otherwise. § 400.2–715(2)(a), RSMo 1978. Under the Code, many courts have held that consequential damages specifically include damages for loss of use. *Seekings v. Jimmy GMC of Tucson, Inc.,* 130 Ariz. 596, 638 P.2d 210, 215 (banc 1981); *Miles v. Kavanaugh,* 350 So.2d 1090, 1093

(Fla.App.1977); *Food Specialties, Inc. v. John C. Dowd, Inc.,* 339 Mass. 735, 162 N.E.2d 276, 283 (1959); *Jacobs v. Rosemount Dodge-Winnebago South,* 310 N.W.2d 71, 78 (Minn.1981); and *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513, 526 (1978). Indeed, our brethren in the Southern District have implicitly held in *Worthey v. Specialty Foam Products, Inc.,* 591 S.W.2d 145 (Mo.App.1979), that the loss of use of a commercial vehicle is a consequential damage recoverable under the Uniform Commercial Code.

In *Worthey,* the Southern District upheld the trial court's award of $700.00 on Specialty Foam's counterclaim for consequential damages resulting from its purchase of an inoperable truck. While not denominated as such, Specialty's claim for damages was one for loss of use. At trial, Specialty introduced evidence that the truck was purchased to haul equipment and make deliveries. 591 S.W.2d at 151. When the truck broke down, Specialty was required to rent a substitute truck and sustained additional hauling expenses. *Id.* Although the present case is not within the confines of the Uniform Commercial Code, guided by the above authorities, we conclude that the "incidental or consequential commercial damages" language in the liability limitation provision contemplates damages for loss of use. *See R & H Trucking, Inc. v. Occidental Fire & Casualty Company,* 2 Ohio App.3d 269, 441 N.E.2d 816, 819 (1981) (loss of use damages in a breach of contract case considered consequential damages).

### IV.

In its final challenge to the liability limitation provision of the contract to repair, World asserts that the provision is unconscionable and against public policy. We disagree.

■ Unconscionability is defined as either procedural or substantive. *Funding Systems Leasing Corporation v. King Louie International, Inc.,* 597 S.W.2d 624,

634 (Mo.App.1978). Procedural unconscionability arises during the contracting process and involves fine print, misrepresentation, and unequal bargaining positions. *Id.* Substantive unconscionability involves undue harshness in the contract terms themselves. *Id.*

 In the present case, the liability limitation provision is not unconscionable, procedurally or substantively. Both Midcoast and World are commercial entities which have previously contracted with each other in a similar manner over a period of years. The provision itself is not hidden in fine print. It is capitalized and underscored. In addition, the terms of the provision are neither unusual nor particularly harsh. World has alleged no misrepresentation.

 Nor is the liability limitation provision against public policy. *Phillips v. Atlantic Richfield Company*, 605 S.W.2d 139, 141 (Mo.App.1979). In contracts for the sale of goods, the Uniform Commercial Code expressly provides that consequential damages may be limited or excluded so long as the limitation or exclusion is not unconscionable. § 400.2–719(3), RSMo 1978. Likewise, in contracts for services, consequential damages may be contractually limited or excluded. *Liberty Financial Management Corporation v. Beneficial Data Processing Corporation*, 670 S.W.2d 40, 46–50 (Mo.App.1984).

### V.

Because the liability limitation provision serves as a complete defense to World's claim for loss of use damages, we do not address Midcoast's remaining points on appeal. The judgment of the trial court in favor of World is reversed and remanded with directions to enter judgment in favor of Midcoast.

CRANDALL, P.J., and KELLY, J., concur.