Eugene PORTMAN,
Plaintiff–Respondent,

v.

MADESCO INVESTMENT CORPORA-
TION, Defendant–Appellant.

No. 53808.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 6, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 19, 1988.

Application to Transfer Denied
Dec. 13, 1988.

Jim J. Shoemake, St. Louis, for defendant-appellant.

Theodore D. Ponfil, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Respondent, Eugene Portman, sought specific performance of a shareholders agreement in the Circuit Court of the City of St. Louis. After a bench trial, the court ordered the appellant, Madesco Corporation, to perform its obligation in accordance with the shareholders agreement. Madesco appeals from that order and judgment.

Eugene Portman served as counsel for Madesco Corporation and its shareholders for several years. During periods relevant to this litigation the major shareholders in the corporation were Norman Probstein, Morton D. May and the Norman Probstein Trust. During his representation of Madesco, Portman became involved in extensive litigation on behalf of Madesco. As a result Madesco owed Portman $65,000 in legal fees.

In 1975 or 1976, Madesco experienced financial difficulties. Probstein offered Portman Madesco stock in lieu of cash in satisfaction for legal fees owed. Sometime later, Portman indicated his willingness to accept the stock. Probstein and Portman agreed that Portman would receive 18,600 shares of Madesco stock worth approximately $3.50 per share. At the time Portman received his shares he executed a proxy in favor of Probstein to assure that Probstein would not lose control of Madesco.

In late 1976 or early 1977, Probstein asked Portman to devise a stock incentive plan whereby certain employees of Madesco would be given some ownership interest in the corporation. Probstein hoped that such a plan would encourage employees to stay with Madesco rather than go to competing corporations. In the summer of 1977 Portman and his associate, Paul Black, began formulating the plan and

drafting the necessary documents. At the time, Portman had not received his stock. Probstein and Portman had several discussions with respect to the proposed plan during which they discussed the general parameters of the proposed plan as well as which employees would be invited to participate. Portman's efforts resulted in the production of two documents. The first, entitled "Stock Incentive Compensation Plan," afforded certain employees the option to purchase shares of Madesco stock. The second entitled "Amended Madesco Investment Corporation Shareholders Agreement," (hereinafter "Amended Shareholders Agreement") contained provisions relating to the redemption of stock distributed under the Stock Incentive Compensation Plan. The documents were discussed and drafts were reviewed at various meetings attended by Probstein, Portman, Black and Ray Badock, Vice President of Madesco. Two meetings were held with employees to explain the Stock Incentive Compensation Plan. At these meetings copies of the Amended Shareholders Agreement were distributed.

Probstein signed both documents on behalf of Madesco. Under the Amended Shareholders Agreement, Portman was listed as an "Employee" for purposes of the redemptive provisions of the plan. However, Portman was not identified as an "Employee" in the Stock Incentive Compensation Plan.

In May 1985 Portman resigned from his position as counsel for Madesco and its subsidiaries and sought to sell his stock pursuant to the Amended Shareholders Agreement. Madesco refused to perform in accordance with the agreement. Portman brought suit in the Circuit Court of the City of St. Louis seeking specific performance under the Amended Shareholders Agreement. On July 27, 1987 the trial court ordered Madesco to perform pursuant to the terms of the Amended Shareholders Agreement. Madesco appeals from that order and judgment. We reverse and remand the cause for a new trial.

Our review of this case is governed by the standards set forth in *Murphy v. Car-*

*ron,* 536 S.W.2d 30 (Mo. banc 1976). Accordingly, the judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously applies or declares the law. *Id.* at 32.

■ In point V Madesco argues that the trial court erred in sustaining Portman's oral motion in limine which prohibited Madesco from introducing evidence regarding the termination of Portman. The court sustained the motion reasoning that any issue of Portman's termination was an affirmative defense and as such was not properly raised in the pleadings.

Madesco argues that evidence of Portman's termination was relevant to determination of the value of Portman's stock should he prevail in his action. Paragraph 5(b) of the Amended Shareholders Agreement provides in pertinent part:

Notwithstanding anything herein to the contrary, in the event an Employee's employment is terminated by reason of or on account of any of the following:

. . . . .

(b) misconduct or willful inattention to the business welfare Corporation that causes loss or injury to the business of Corporation, then the per share purchase price shall in no event exceed the amount paid by such Employee to purchase said shares less the amount of any loss, damage or expense incurred by Corporation as the result of such Employee's actions.

The trial court concluded that the issue of Portman's termination had never been raised in the pleading by way of affirmative defense or alternate theory. Madesco's position in its pleadings was that Portman was not an employee and was not entitled to recovery. Paragraph 20 of Madesco's answer seeks a set-off of monies which may be due Portman should he prevail, with damages which may be due Madesco should it prevail on the allegations of professional negligence set forth in its counter claim.

The set off issue raised in Madesco's answer is distinct from the termination is-

sue in dispute. No issue of whether Portman was subject to the provision of 5(b) was raised in Madesco's answer. If the application of 5(b) was indeed an affirmative defense, it was waived when it was not pleaded. *Detling v. Edelbrock*, 671 S.W.2d 265, 271 (Mo. banc 1984).

An affirmative defense is a defense which avers that even if the petition is true, the plaintiffs cannot prevail because there are additional facts which permit the defendant to avoid legal liability. *World Enterprises, Inc. v. Midcoast Aviation Services, Inc.*, 713 S.W.2d 606, 608 (Mo. App.1986).

"Additional facts" are new matters which have arisen since plaintiff's cause of action came into existence and which do not form part of the original transaction. *Id.* at 608–609. Rule 55.08 requires affirmative defenses to be pleaded in order to give notice to the plaintiff. *Id.* Evidence which tends to show plaintiff's cause never had legal existence is admissible in a general denial if they are offered to negative the plaintiff's cause of action and not by way of confession or avoidance. *Parker v. Pine*, 617 S.W.2d 536, 542 (Mo.App.1981).

This court has held that a contractual provision limiting liability was not an affirmative defense when it was part of the original contract in dispute. *World Enterprises*, 713 S.W.2d at 609. In that case the court found that since the limitation provision was part of the original contract, it was not an additional fact or new matter which the defendant waived when it failed to plead the provision in its answer. *Id.* A similar analysis applies to the case at bar. Section 5(b) was part of the Amended Shareholders Agreement as it was originally drafted. It was not a new or additional matter which Madesco waived when it failed to plead the provision in its answer. The provision contained a valuation formula that may have decreased the amount owed Portman under the agreement if evidence showing "misconduct or willful inattention" was adduced. The exclusion of evidence surrounding Portman's separation from Madesco was erroneous application of the law. On this issue alone we reverse and remand this cause for a new trial.

Because the issues contained in Madesco's remaining points on appeal are likely to recur on retrial, we will address them now.

■ Points I and II of appellant's brief concern the conclusion of law number 8 issued by the trial court which states:

Because Defendant Madesco was aware of, consented to, and, in fact, instructed Portman as to the terms of the Amended Shareholders' Agreement and Portman complied with those instructions, the fact that Portman was an attorney and Madesco was his client at the time of the transaction at issue imports no legal significance. That is because, based upon the factual findings of this Court, Plaintiff has not asserted an interest adverse to his former client, Madesco. See *Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595, 605 (Mo.App. 1983). The facts demonstrate, clearly and unequivocally, an awareness, understanding and acquiescence by Madesco to the contents of the Amended Shareholders' Agreement, including, specifically, its application to Portman. Portman asserted no undue advantage, perpetrated no fraud and in no way overreached with respect to Madesco. To the contrary, credible evidence demonstrates Portman exhibited a "scrupulous fidelity to the cause of the client." *Id.*

Madesco argues that the court erred in finding that Portman has not asserted an interest adverse to Madesco and that the attorney-client relationship between Portman and Madesco was of no legal significance. This conclusion, argues Madesco, is an erroneous declaration and application of the law which warrants a new trial.

The principles set forth in *Shaffer v. Terrydale Management Corp.*, 648 S.W.2d 595 (Mo.App.1983) are applicable to the instant case. The facts in *Shaffer* are remarkably similar to the facts of the case at bar. At the request of his client Gramlich, Shaffer, an attorney, created the Terrydale Corporation to administer the assets of a real estate investment trust. Shaffer be-

came the attorney for the corporation as well as Gramlich's personal attorney. Gramlich directed Shaffer to devise a shareholders agreement to insure that the corporation remained a family enterprise as well as a document to grant the corporation the right to redeem the stock of an inactive shareholder. For his services Shaffer received a monthly cash stipend as well as ten percent of Terrydale stock.

Several years later Shaffer became inactive in the corporation and Terrydale sought to purchase his stock pursuant to the agreement. Shaffer refused to sell arguing that he was not an employee under the terms of the agreement. Terrydale sought a declaration of its rights under the agreement.

The pivotal question in *Shaffer* was whether the right Shaffer claimed adversely to Terrydale, and which was derived from the terms of the agreement drafted by Shaffer, was disclosed to the client and given acquiescence. The court recognized that transactions involving an attorney and his client are subject to stringent review in order to ensure the integrity of the fiduciary relationship. *Id.* at 605. The attorney must show by clear proof that his adverse interest was disclosed to the client and was perfectly understood. *Id.* at 608.

Accordingly, in the case at bar Portman was obliged to show by clear proof that the terms of the agreement related to his status as an employee was fully disclosed and that Madesco consented to those terms. We are satisfied that there is substantial evidence on the record from which the trial court could have found Portman met his burden.

In *Shaffer*, the client sought an agreement that would allow the corporation to relieve inactive shareholders of their stock. When the attorney became inactive he refused to sell. His refusal to comply with the terms of the agreement was antagonistic to the interest of Gramlich because it would allow Shaffer to negotiate the sale of shares rather than to submit to redemption at book value. In that way Shaffer claimed a singular benefit from the document he formulated. In this case there is

no such antagonistic claim. The redemption provisions in shareholders agreement was designed in part to keep the ownership and control of the corporation within the hands of a few select individuals. In accordance with that plan, after he separated from Madesco, Portman sought to sell his shares back to the corporation. Portman's claim or action in seeking to sell his shares back to Madesco is consistent with, rather than adverse to, the interests of Madesco. Further, Portman sought no exemption from the valuation formula applicable to other shareholders.

Madesco also argues that the trial court erred in finding no legal significance in the attorney-client relationship between Portman and Madesco. Under *Shaffer* the attorney-client relationship is significant only in that it requires the party seeking relief under the terms of a contract to show that the other party acted with full knowledge in consenting to the terms of the agreement. Once those elements are satisfied the fact that the attorney-client relationship is involved in the transaction is of no significance. We find no error. Points I and II are denied.

■ Appellant's third point raises two issues. First, Madesco argues that the finding of the trial court that the terms of the Amended Shareholders Agreement were fully disclosed to Madesco was against the weight of the evidence. In a court tried case where the evidence is conflicting, appellate courts resolve such conflicts by deferring to the trial court because of its superior opportunity to observe the conduct and demeanor of the parties and witnesses, and to weigh and evaluate their testimony. *Watson v. Warren*, 751 S.W.2d 406, 410 (Mo.App.S.D.1988).

The evidence adduced at trial was conflicting. Portman and his associate Black testified that the Amended Shareholders Agreement was reviewed in detail with Probstein and May. At a meeting held to explain the terms of the agreement to the persons bound by it, a copy of the agreement was given to each person. Probstein, whom the trial court described as a shrewd and astute businessman, testified that al-

though Portman presented the Amended Shareholders Agreement to him, he signed it without reading it. He stated that it was his practice not to read documents he signed. The other persons bound by the agreement testified that they were not aware that Portman was included as an employee in the Amended Shareholders Agreement even though they had been provided a copy of the agreement at the meeting.

The trial court found that Portman had shown by "clear and convincing evidence" that Madesco was aware of, and consented to, the terms of the agreement. Affording due deference, we find that the conclusion of the trial court was supported by substantial evidence and was not against the weight of the evidence.

 In the second portion of Madesco's third point it is argued that the court erred in failing to make any findings regarding the fairness of the transaction to Madesco. Respondent fails to address this contention in his brief. In *Shaffer*, this court recognized that the law requires that "all of the dealings between the attorney and his client shall be characterized by the utmost fairness and good faith...." *Shaffer*, 648 S.W.2d at 605, *quoting* 2 Mechem, a Treatise on the Law of Agency Section 2289 et seq. (2d Ed.1982). However, the element of fairness is inherent in the duty of loyalty owed by attorney to his client. It is because of that duty that the attorney must act solely for the benefit of the client and may not acquire interests adverse to the client without disclosure and acquiescence. *Id.*

Thus *Shaffer* recognizes an element of fairness but only as an inherent part of the duty of loyalty owed by the attorney. In transactions such as this all that must be found is disclosure and acquiescence; no specific finding of fairness is required under *Shaffer*.

Finally, in point VI Madesco argues that the trial court erred in severing its counterclaim from the action which is the subject of this appeal. The trial court has the authority to grant a separate trial of any claim or issue "in furtherance of conve-

nience" or when such an action will be "conducive to expedition and economy." Rule 66.02. The decision to grant such an order lies within the sound discretion of the trial court and will be reversed on appeal only upon a showing of an abuse of discretion. *International Harvester Credit Corp. v. Formento*, 593 S.W.2d 576, 579 (Mo.App.1980). We find no abuse of discretion. The judgment and order of the trial court is reversed and the cause is remanded for a new trial.

STEPHAN, P.J., and DOW, J., concur.